LAMONT BREWINGTON v. NORTH CAROLINA DEPARTMENT OF CORRECTION

No. 9210IC675

(Filed 7 September 1993)

1. **State § 8.3 (NCI3d) — unsecured drain cover in prison kitchen — negligence action against State — sufficiency of evidence to support findings**

    In an action to recover for injuries sustained by plaintiff inmate who slipped and fell on an unsecured drain cover in the kitchen of Central Prison, evidence was sufficient to support the trial court's findings with regard to the request to repair the drain cover, the availability of tamper-resistant screws, and completion of the repair.

    **Am Jur 2d, Penal and Correctional Institutions §§ 181, 200.**

2. **State § 10 (NCI3d)— claim under Tort Claims Act—appeal to full Commission—findings and conclusions not required of Commission**

The Industrial Commission, when hearing appeals of claims from a hearing commissioner under the Tort Claims Act, may make its own findings of fact and conclusions of law but is not required to do so, and though the ideal practice would be for the full Commission to give some factually specific reason for its decision in every case, when, as here, the claimant appeals to the Commission making only a general allegation that the hearing commissioner erred in finding that the defendant was not negligent and that such decision was not supported by the evidence, the Commission may respond to such appeal by reviewing the record and, when appropriate, affirming and adopting the decision and order of the hearing commissioner.

**Am Jur 2d, Administrative Law §§ 447, 450.**

Appeal by plaintiff from a decision and order of the Industrial Commission filed 6 March 1992. Heard in the Court of Appeals 26 May 1993.

Plaintiff filed this action on 12 June 1989, with the North Carolina Industrial Commission, pursuant to the North Carolina Tort Claims Act (N.C. Gen. Stat. §§ 143-291 to -300.1 (1990 & Supp. 1992) ). Plaintiff alleged that, on 2 March 1989, while he was working in the kitchen of Central Prison, he was injured when he slipped and fell on an unsecured drain cover. Deputy Commissioner Scott Taylor heard the case, and by decision and order filed on 27 December 1990, he found that there was no negligence on the part of any of the named employees and officers of the defendant and denied the plaintiff's claim. Plaintiff appealed to the full Industrial Commission, which affirmed and adopted the decision and order of the Deputy Commissioner on 6 March 1992. From the decision and order of the Commission, plaintiff appeals.

*Leland Q. Towns for plaintiff.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General E. H. Bunting, Jr., for defendant.*

McCRODDEN, Judge.

Plaintiff brings forward two arguments based on numerous assignments of error. First, he contends that the Commission erred

in adopting the decision and order of the Deputy Commissioner because the Deputy Commissioner's findings of fact were not supported by the evidence which, he contends, actually showed that defendant was negligent.

Appeals to this Court from the full Industrial Commission are "for errors of law only . . . and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them." N.C. Gen. Stat. § 143-293 (1990). It does not matter that the evidence might support a contrary finding. *Bailey v. Dept. of Mental Health*, 272 N.C. 680, 683-84, 159 S.E.2d 28, 30-31 (1968). Thus, there are only two questions on appeal, whether there was any competent evidence to support the findings and whether those findings support the conclusions of law. *Id.* at 684, 159 S.E.2d at 31.

In his order, the Deputy Commissioner found, in pertinent part, the following facts:

4. Prior to 2 March 1989, Mr. George Jones, the food service supervisor, had been informed that the drain cover in the pots and pans area of the kitchen needed screws. Mr. Jones completed a work request for the replacement of the screws on 22 February 1989.

5. The drain covers in the Central Prison kitchen use tamper resistant screws . . . [which] are not available from general retail stores and must be ordered.

6. Prior to 2 March 1989, Mr. George Jones and Mr. Chester Edwards warned the inmates working in the kitchen, including plaintiff, about the unsecured drain cover.

7. Defendant's employee George Jones is not responsible for maintenance repairs, such as the replacement of screws. Maintenance of this type was carried out by the maintenance department, whose supervisor is Mr. [Marvin] Sills. The maintenance department handles such requests in the order of priority by need.

8. On and prior to 2 March 1989, Mr. Chester Edwards was not responsible for maintenance or repairs to the drain cover.

9. Following receipt of the request from Mr. Jones on 22 February 1989, the maintenance department responded. There were, however, no tamper resistant screws which were available at the time. As a temporary measure, regular screws were

put in the drain cover, which were subsequently removed prior to plaintiff's injury on 2 March 1989. . . .

10. The drain cover was repaired with tamper resistant screws on 10 March 1989.

[1] Plaintiff assigned error to each of these findings. However, in his brief, he made arguments concerning only the last two of these assignments of error. Consequently, plaintiff has abandoned the balance of the assignments of error to the findings of fact, N.C.R. App. P. 28(b)(5), and we address only findings 9 and 10.

Upon review of the record, we determine that there was competent evidence to support finding of fact 9. At the hearing, George Jones, the food service supervisor, testified that he had submitted a maintenance request concerning the unsecured drain cover and that a drain in the kitchen was fixed on 22 February 1989. Jones, Harold Pearce, the plumber-supervisor at Central Prison, and Marvin Sills, the head of maintenance at the prison, all testified that there were no tamper resistant screws available at that time. No witness directly testified that the drain cover had been fixed with standard screws as a temporary measure prior to plaintiff's fall on 2 March 1989. However, Jones testified that at least one drain in the kitchen had been fixed on 22 February 1989. Pearce testified that during the period when there were no tamper resistant screws available, regular screws were used as a temporary measure; that it was possible that the drain in question had been one of the ones fixed on 22 February 1989; and that it was possible that regular screws had been placed in the drain cover and pried out again before the drain was fixed with tamper resistant screws. Sills also testified that the drain in question could have been one of those fixed on 22 February 1989. We conclude that this was sufficient evidence to support finding of fact 9.

Although we question the prejudice that would result from plaintiff's successful contention regarding finding of fact 10, we have reviewed the record and conclude that there was competent evidence supporting that finding as well. Pearce testified that tamper resistant screws were generally used to secure drain covers throughout the kitchen. During cross examination of Pearce by plaintiff's attorney, the following exchange occurred:

Q. When did you first try to fix the drain cover in question here?

A. It was fixed on the 10th.

Q. On March 10?

A. Yes.

It is reasonable to infer that when Pearce said the drain was fixed on 10 March 1989, he meant it was fixed with tamper resistant screws. This is clearly some competent evidence from which the Deputy Commissioner could find that the drain had been fixed with tamper resistant screws on 10 March 1989.

Having reviewed the full record, we conclude that there was, in fact, competent evidence to support each of the Deputy Commissioner's findings of fact. There was evidence supporting the findings that the named defendants acted in a reasonable manner and breached no duty to the plaintiff, and these findings support the conclusion that none of the named defendants was negligent. This conclusion in turn supports the order denying plaintiff's claim. Accordingly, plaintiff's first argument is without merit.

[2] Plaintiff's second argument is that the full Commission denied him meaningful appellate review under N.C.G.S. § 143-292 by summarily affirming and adopting the Deputy Commissioner's decision and order.

In its order, the Commission stated that:

· This matter is before the Full Commission on plaintiff's appeal from a Decision and Order filed by Deputy Commissioner Scott M. Taylor on December 27, 1990.

The undersigned have reviewed the record in its entirety and find no reversible error.

· In view of the foregoing, the Full Commission AFFIRMS and ADOPTS as its own the Decision and Order as filed.

After discharge from prison, plaintiff may seek relief for any disability related to the injury per G.S. 97-13(c).

Each side shall pay its own costs.

Plaintiff relies on cases like *Joyner v. Rocky Mount Mills*, 92 N.C. App. 478, 374 S.E.2d 610 (1988), and its progeny for the proposition that the full Commission must make its own findings of fact and conclusions of law. In *Joyner*, a panel of this Court proclaimed:

[A]lthough it hardly need be repeated, . . . the "full Commission" is not an appellate court in the sense that it reviews

decisions of a trial court. It is the duty and responsibility of the full Commission to make detailed findings of fact and conclusions of law with respect to every aspect of the case before it.

*Joyner*, 92 N.C. App. at 482, 374 S.E.2d at 613. The *Joyner* Court held that when the full Commission entered a decision and order that merely affirmed and adopted the findings of fact of the hearing officer, it denied the plaintiff effective appellate review. Our courts have consistently upheld and applied this principle, most recently in a case from last year, *Hardin v. Venture Construction Co.*, 107 N.C. App. 758, 421 S.E.2d 601 (1992).

The *Joyner* line of cases, however, is distinguishable from the case at hand, and we believe that it is not controlling in this situation. In *Joyner*, and in each of the cases that has followed its decision, the claim at issue was one for workers' compensation benefits, whereas the claim at issue here is one brought under the Tort Claims Act. The controlling statute in *Joyner et al*, Section 97-85 of the Workers' Compensation Act, provides that "[i]f application is made to the Commission . . . the full Commission shall review the award, and, if good ground be shown therefor, reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award." N.C. Gen. Stat. § 97-85 (1991).

On the other hand, N.C.G.S. § 143-292 governs appeals to the Commission from a hearing commissioner, and it provides, in pertinent part:

Such appeal, when so taken, shall be heard by the Industrial Commission, sitting as a full Commission, on the basis of the record in the matter and upon oral argument of the parties, and said full Commission may amend, set aside, or strike out the decision of the hearing commissioner and *may* issue its own findings of fact and conclusions of law.

N.C.G.S. § 143-292 (emphasis added).

We believe that the function performed by the full Commission when addressing claims under the Tort Claims Act is not the same as the one it performs when hearing a workers' compensation claim. The clear meaning of the last sentence of the quoted portion of Section 143-292 is that the full Commission may, but is not required to, issue its own findings of fact and conclusions of law. It is also

significant, we think, that under the Tort Claims Act, the full Commission is not empowered to hear new evidence as it is when hearing workers' compensation appeals. This means that the responsibility of weighing the credibility of the witnesses lies solely with the hearing commissioner. The Commission may only review the record of the deputy commissioner's hearing and oral arguments of the parties.

We conclude that the Commission, when hearing appeals of claims from a hearing commissioner under the Tort Claims Act may make its own findings of fact and conclusions of law, but that it is not required to do so. The ideal practice would be for the full Commission to give some factually specific reason for its decision in every case. However, when, as here, the claimant appeals to the Commission making only a general allegation that the hearing commissioner erred in finding that the defendant was not negligent and that such decision was not supported by the evidence, we believe that the Commission may respond to such appeal by reviewing the record and, when appropriate, affirming and adopting the decision and order of the hearing commissioner. Accordingly, we reject this assignment of error and affirm the decision and order of the Industrial Commission.

Affirmed.

Judges EAGLES and LEWIS concur.