### IN THE MATTER OF DR. R. B. HAYES.

(Filed 27 January, 1931.)

**1. Contempt C a—Industrial Commissioner has power to punish for contempt a duly sworn witness who refuses to testify in proceedings before him.**

The attending physician of a claimant under the Workmen's Compensation Act who has been duly subpoenaed to attend and give evidence at a hearing by a member of the Industrial Commission, after having been duly sworn and examined and cross-examined may not refuse to give his testimony concerning a vital matter involved on the ground that he first be qualified as an expert and his fees as such fixed, and in persistently refusing to obey the order of the chairman may be punished by fine or imprisonment, the right to so punish being inherent in the Commission and necessary for the performance of its duties, and it is not required that the power be expressly given by statute. Chapter 120, Public Laws of 1929.

**2. Witnesses A c—Amount to be paid expert witness is within discretion of the trial court.**

The amount to be paid an expert witness testifying at a hearing before a commissioner of the Industrial Commission in proceedings before him under the Workmen's Compensation Act is a question to be determined in the discretion of the court and the witness may not require that it be fixed in advance before testifying as to a material matter involved in the inquiry. C. S., 3893.

**3. Master and Servant F i—Facts found by Industrial Commission upon supporting evidence are conclusive upon appeal.**

The facts found by a member of the Industrial Commission upon supporting evidence in a hearing before him, and approved by the full Commission, are conclusive upon the court upon appeal.

**4. Master and Servant B a — Industrial Commission or any member thereof may subpoena witness for hearing before it or him.**

The express provision of the statute conferring upon the Industrial Commission the power to subpoena witness for a hearing before it or one

of its members designated for that purpose is not impaired or diminished by the provisions of the act empowering the Superior Court in proper instances to aid the Commission in procuring the attendance of witnesses at its hearings, or before any member or deputy thereof.

5. **Contempt C a—Hearing before Industrial Commissioner is a judicial proceeding and he may punish duly sworn witness for contempt thereat.**

The Industrial Commission proceeding under the Workmen's Compensation Act, being expressly given the authority to subpœna witnesses and have them give evidence at the hearing, acts in a judicial capacity in adjudging in contempt a witness who refuses to give material evidence, and in imposing a sentence or a fine or imprisonment under the provisions of C. S., 981.

The above-entitled cause was heard in this Court on the return to a writ of *certiorari* issued on the petition of Dr. R. B. Hayes, as a substitute for an appeal from *Harris, J.*, at Chambers. C. S., 630.

It appears from the petition for the writ of *certiorari* filed in this Court that on 5 March, 1930, the petitioner, Dr. R. B. Hayes, was arrested and held in custody by the sheriff of Orange County, pursuant to an order made by the Chairman of the North Carolina Industrial Commission on 3 March, 1930; that thereafter the said Dr. R. B. Hayes applied to the Honorable W. C. Harris, judge of the Superior Court, for a writ of *habeas corpus,* alleging in his petition for said writ that he was unlawfully imprisoned and restrained of his liberty by the sheriff of Orange County, for that the order, by virtue of which he was arrested and held in custody by the said sheriff, was without authority of law, and therefore void; and that at the hearing on the return of the writ of *habeas corpus,* issued by the Honorable W. C. Harris, his prayer that he be discharged from custody was denied, and he was remanded to the custody of the sheriff of Orange County. The petitioner prays this Court to issue a writ of *certiorari* directing that the proceedings in which the judgment denying his prayer that he be discharged from custody, and remanding him to the custody of the sheriff of Orange County, was rendered, be certified to this Court for a review of said judgment to determine whether or not there is error in said judgment as contended by the petitioner.

It appears from the return made to the writ of *certiorari* issued by this Court, pursuant to the petition therefor, that the order by virtue of which the petitioner was arrested and held in custody was made by the Chairman of the North Carolina Industrial Commission, at a hearing before said chairman on 3 March, 1930, of a cause pending before said Commission, entitled, "J. O. Thompson, Employee, *v.* E. H. Clements Co., Employer, and U. S. Casualty Company, Carrier." The

said cause involved the claim of the employee to compensation to be paid by the employer, and its carrier for injuries sustained by the employee, as the result of an accident, in the course of his employment, under the provisions of the North Carolina Workmen's Compensation Act. Upon the admissions made by the parties to the cause, and entered in the record of the hearing, the Commissioner ruled that there was but one question to be decided by him, to wit, whether or not the condition of the claimant at the date of the hearing was the result of the accident and resulting injury which occurred on 19 October, 1929.

At said hearing Dr. R. B. Hayes, the physician who had attended the employee at the time he was injured, and who had filed with the Commission on 13 November, 1929, his report as such attending physician, was present as a witness for the claimant. After he had been sworn, and had testified both on direct and cross-examination, Dr. Hayes was examined by the Chairman of the North Carolina Industrial Commission, who presided at the hearing. The record of this examination is as follows:

"Q. Have you an opinion as to whether or not the blow he (the claimant) received on 19 October would have produced the paralytic stroke on 12 January? A. I have an opinion, but will not testify unless I get expert compensation.

Q. What is this opinion? A. Do you qualify me as an expert?

Q. No, sir, it is not up to me to qualify you. I can only pass upon your qualifications when I know them. I only know you are a practicing physician up to this time. A. Then I decline to express an opinion.

Q. Doctor, I again ask you to answer the question, and give me your opinion as to whether or not the claimant's present condition is the result of the accident and injury on 19th October? A. I decline to answer the question.

Q. Dr. Hayes, I ask you again to answer the question, giving your opinion as to whether or not this man's condition is the result of the accident and injury on 19th October? A. I decline to answer the question.

Q. Dr. Hayes, I have no desire to do anything that would hurt or injure you, and I hesitate to enter any judgment here that will embarrass you, but I must insist that you render proper respect to me as a court, and answer the question propounded. The question which has been asked you is the only question to be determined by the Industrial Commission at this hearing; and upon it depends whether or not this claimant will be awarded or denied compensation. I want to be entirely respectful and courteous to you, and I hope you will not let anything personal influence you in your decision to answer this question. A. I still decline to answer the question.

Q. Now, Dr. Hayes, I want to say to you that if there is anything personal which has entered into your refusal to answer this question, I hope you will put aside any personal feeling and consider me for the time being as a court, and entitled to the respect due to a court, and I call upon you again to answer the question propounded by the court, and in this connection I want to say to you that this hearing was had in the bedroom and at the bedside of the claimant who was your patient, because he was unable to attend court, and because he is in such condition that he needs any compensation that may be due him, and that the question of compensation cannot be decided until the question which has been propounded to you has been answered and passed upon by the Commission. A. It is my understanding that a man's opinion is his personal property, and is to be paid for at his price. An expert must be paid expert fees. That is my understanding. You have the right to order me to examine the man, and ask my opinion as an expert.

Q. Doctor, before entering any judgment, I want to say to you that if you have any doubt about your rights, and desire to advise with counsel, there are two good lawyers present, one representing the plaintiff, and the other the defendants, who will tell you what you should do under the circumstances. A. When I seek expert advice, I expect to pay for it, and I prefer to consult my own lawyer."

At the close of this examination, the Commissioner found the following facts:

"1. That Dr. R. B. Hayes is the physician who first attended the claimant after his injury, and continued to treat him as his physician until he returned to work nine days later.

2. That Dr. R. B. Hayes was duly and regularly subpœnaed as a witness to attend the hearing at the residence of the claimant, J. O. Thompson, on Monday, 3 March, at 3 o'clock p.m. That in response to said subpœna Dr. Hayes did appear in person, and was duly sworn as a witness on behalf of the plaintiff.

3. That Dr. R. B. Hayes deliberately and defiantly refused to answer the question propounded by the Commissioner, as to whether or not the present condition of the claimant is the result of the accident and injury for which the said Dr. Hayes treated the claimant.

4. That the said Dr. R. B. Hayes by his refusal to answer the question propounded by the Commissioner meant and intended to show his contempt for the court."

Upon the foregoing facts found by the Commissioner and entered in the record, it was "ordered and adjudged by the Commissioner that Dr. R. B. Hayes be confined in the common jail of Orange County, North Carolina, for a period of ten days, or until such time as he shall decide to answer the question propounded by the court. Execution to issue on 5 March, 1930."

IN RE HAYES.

Pursuant to a commitment issued by the Chairman of the North Carolina Industrial Commission, in accordance with the foregoing order, Dr. R. B. Hayes was arrested and held in custody by the sheriff of Orange County.

On the return to the writ of *habeas corpus* issued by Judge Harris, judgment was rendered as follows:

"IN THE MATTER OF DR. R. B. HAYES.

This cause coming on to be heard upon petition for writ of *habeas corpus,* duly made and filed herein, and the same being heard, and the court being of the opinion, that the said petitioner is not entitled to be discharged from the imprisonment to which he has been committed by the Chairman of the North Carolina Industrial Commission, for contempt:

"It is now, therefore, ordered and adjudged that the petition be and the same is hereby dismissed, and the petitioner will be remanded into custody.                                                   W. C. HARRIS,
         *Judge holding the Courts of Tenth Judicial District of N. C."*

On the return to the writ of *certiorari,* the petitioner, Dr. R. B. Hayes, contends that there is error in the foregoing order and judgment.

*Fuller, Reade & Fuller and Gattis & Gattis for petitioner.*
*Attorney-General Brummitt and Assistant Attorney-General Siler for respondent.*

CONNOR, J. The petitioner, Dr. R. B. Hayes, was correctly advised by his counsel that no appeal would lie from the judgment at the hearing on the return of the writ of *habeas corpus.* The only remedy available to the petitioner for a review by this Court of the judgment, in order to determine its validity, was a petition for a writ of *certiorari,* which in proper cases is a substitute for an appeal. C. S., 630. *S. v. Edwards,* 192 N. C., 321, 135 S. E., 37; *In re McCade,* 183 N. C., 242, 111 S. E., 3; *In re Croom,* 175 N. C., 455, 95 S. E., 903; *In re Holley,* 154 N. C., 163, 69 S. E., 872. The petition for a writ of *certiorari* was allowed. On the return to said writ, this Court has jurisdiction to review the judgment, and the proceedings in which it was rendered, in order to determine whether or not there is error of law in the judgment. The findings of fact upon which the order was made by the Chairman. of the North Carolina Industrial Commission, under which the petitioner was arrested and held in custody by the sheriff of Orange County, were conclusive at the hearing on the return to the writ of *habeas*

*corpus,* if the said Chairman had the power to make the order, punishing the petitioner for contempt. These findings are also conclusive in this Court, and will not be reviewed. The only question, therefore, presented to Judge Harris for his decision, was whether the Chairman of the North Carolina Industrial Commission, upon the facts shown by the record of the hearing before said Chairman, had the power to adjudge the petitioner in contempt, and upon such adjudication to order that he be imprisoned in the common jail of Orange County for a period of ten days as punishment for such contempt. Judge Harris answered this question in the affirmative, and thereupon refused to discharge the petitioner and remanded him to the custody of the sheriff of Orange County. We are of the opinion that there is no error in the judgment rendered by Judge Harris.

The question raised by the petitioner at the hearing before the Chairman of the North Carolina Industrial Commission by his refusal to answer the question propounded to him by the said Chairman, on the ground that the question was addressed to him as an expert, and that he could not be required to answer the question until he had been paid, or until he had been assured by the said Chairman that he would be paid; a fee as an expert witness, in amount satisfactory to him, is not presented on the record now in this Court. The question has not heretofore been decided by this Court. It has, however, been presented to and decided by courts in other jurisdictions. It has been held in a few cases that a witness who has been summoned as an expert in a judicial investigation cannot be adjudged in contempt for refusing to give such testimony unless he has been compensated for his professional opinion. The better opinion, however, is that an expert summoned to testify who refuses to answer questions without compensation other than his witness fees is in contempt. And when an expert voluntarily submits himself to an examination as such, he can in no case refuse to answer one particular question after having, without objection, answered others. 13 C. J., sec. 33, at p. 27, and cases cited in notes. In this State it is provided by statute that experts, when compelled to attend and testify as witnesses shall be allowed such compensation and mileage as the court in its discretion may allow. C. S., 3893. It would seem that this statutory provision for their compensation ought to·be sufficient assurance to experts who are called upon to testify in the courts of this State, that they will be paid for their attendance and testimony a fair and reasonable amount.

On the record now before this Court, the only question presented for its decision is whether the Chairman of the North Carolina Industrial Commission, or any member of said Commission, has the power to adjudge a witness who has refused to answer a question propounded to

him at a hearing before said Chairman or member of said Commission, of a cause pending before said Commission, and duly assigned to said Chairman or member for hearing in contempt for such refusal, and upon such adjudication to punish the witness by imprisonment.

The North Carolina Industrial Commission, consisting of three members appointed by the Governor of the State, one of whom has been designated by him as Chairman, was created by statute. Chapter 120, Public Laws 1929. It is primarily an administrative agency of the State, charged with the duty of administering the provisions of the North Carolina Workmen's Compensation Act. In cases where an employer and an employee, subject to the provisions of said act, have agreed as to the compensation to be paid by the employer and to be received by the employee, under the provisions of the act, for injuries sustained by the employee, and resulting from an accident which has occurred during the course of the employment, a memorandum of the agreement in the form prescribed by said Commission, accompanied by a full and complete medical report, shall be filed with and approved by the Commission. If, however, the employer and the injured employee fail to reach an agreement in regard to the compensation, or if after having reached an agreement, which has been approved by the Commission, they disagree as to whether said agreement has been complied with in any respect, either party may apply to the Commission for a hearing in regard to the matter in controversy and for a ruling by the Commission thereon. The Commission or any one of its members, after receipt of an application for such hearing, shall set a time and place for a hearing, and shall notify each party of such time and place. "The Commission or any of its members shall hear the parties in issue, their respresentatives and witnesses, and shall determine the dispute in a summary manner. The award, together with a statement of the findings of fact, rulings of law, and other matters pertinent to the questions at issue shall be filed with the record of the proceedings and a copy of the award shall immediately be sent to the parties in dispute."

Where the hearing is before a Commissioner, either party may have his decision reviewed by the full Commission by an application to said Commission made within seven days from the date when the notice of the award was received by such party. The award of the Commission, when the hearing was before the full Commission, or when the award of a Commissioner at a hearing before him has been reviewed by the full Commission upon the application therefor by a party to such award, shall be conclusive and binding as to all questions of fact. Either party may, however, appeal to the Superior Court from an award of the full Commission and on such appeal be heard as to alleged

errors of law in the award. "Any party in interest may file in the Superior Court of the county in which the injury occurred a certified copy of a memorandum of agreement approved by the Commission, or of an order or decision of the Commission, or of an award of the Commission unappealed from or of an award of the Commission affirmed upon appeal; whereupon said court shall render judgment in accordance therewith and notify the parties. Such judgment shall have the same effect and all proceedings in relation thereto shall thereafter be the same, as though said judgment had been rendered in a suit duly heard and determined by said court."

Power is expressly conferred by the statute creating the North Carolina Industrial Commission, upon said Commission or upon any member thereof, to subpœna witnesses for either party to a cause, pending before said Commission, to attend and testify at a hearing before the full Commission or before any member thereof. A witness, when a subpœna has been duly served on him, is required to attend the hearing, and to testify, after he has been duly sworn. His answers to questions propounded to him at the hearing constitute evidence from which the Commission or the Commissioner presiding at the hearing finds the facts upon which the award is made. Without such evidence, when the facts are in dispute, neither the full Commission nor the Commissioner can perform the duties imposed by the statute. If a witness in attendance at a hearing, after having been duly sworn, can refuse to answer a question propounded to him, which is pertinent to the matters in dispute between the parties, with impunity, then it is manifest that the North Carolina Industrial Commission, created by statute to administer the provisions of the North Carolina Workmen's Compensation Act, and to determine the rights and liabilities of employers and employees, subject to its exclusive jurisdiction under the provisions of the act, is without adequate power to perform its duties prescribed by statute, to the people of this State and to the parties to a cause pending before the said Commission. It is provided in the statute that "the Superior Court shall, on application of the Commission, or any member or deputy thereof, enforce by proper proceedings the attendance and testimony of witnesses and the production and examination of books, papers and records." This provision is clearly not adequate for a situation such as that disclosed by the record of the hearing at which the petitioner herein, upon the facts found by the Commissioner and set out by him in the record, was adjudged in contempt and punished therefor. Under this provision, in proper cases, the Superior Court has the power to aid the Commission in procuring the attendance of witnesses at hearings before the Commission or before any member or deputy thereof. It does not, however, by its express terms or by implication, deprive the

Commission or any member thereof, while conducting a hearing as required by statute, of the power to compel a witness, in attendance at said hearing, after having·been duly sworn, to testify.

It has been uniformly held by this Court and by courts of other jurisdictions that the power to punish for contempt committed in the presence of the court, is inherent in the court, and not dependent upon statutory authority. *Snow v. Hawkes,* 183 N. C., 365, 111 S. E., 621, *Ex Parte McCown,* 139 N. C., 95, 51 S. E., 957, 13 C. J., 46. Without such power the court cannot perform its judicial function. This principle is especially applicable when the contempt consists in the refusal of a witness in attendance upon the court, after having been duly sworn, to answer a question propounded to him for the purpose of eliciting evidence material to the issue to be decided by the court. On this principle with regard to the question chiefly discussed on the argument and in the briefs filed in this Court, as to whether or not the North Carolina Industrial Commission is a court, within definitions to be found in the cited cases and in the text-books, we are of the opinion that the Commission or any of its members, when conducting a hearing for the purpose of deciding questions upon which the rights and liabilities of an employer and an employee, under the North Carolina Workmen's Compensation Act, are to be determined by the Commission or by one of its members, has the power to adjudge a witness who has deliberately and persistently refused to answer a question propounded to him, in contempt, and to punish such witness for such contempt, by fine or imprisonment. C. S., 981. When conducting hearings as required by the statute, the Commission or the Commissioner, is 'performing duties which are judicial in their nature. These duties are prescribed by statute. It cannot be held that the Commission or Commissioner is without adequate power to perform these duties. One of these statutory duties is to subpœna witnesses, and to require witnesses, who are in attendance at a hearing, and who have been duly sworn, to testify. Upon the contemptuous refusal of such witness to testify, the Commission or Commissioner presiding at the hearing, has the power to adjudge the witness in contempt and to punish for such contempt, within the limitations prescribed by statute. *In re Oldham,* 89 N. C., 23.

In accordance with this opinion the judgment certified to this Court for review is

Affirmed.