NORWOOD FENNELL AND ANNIE FENNELL, ADMINISTRATORS OF THE ESTATE OF KENNETH B. FENNELL, DECEASED, PLAINTIFFS v. NORTH CAROLINA DEPARTMENT OF CRIME CONTROL AND PUBLIC SAFETY, DEFENDANT

No. COA00-824

(Filed 21 August 2001)

**1. Tort Claims Act— reversal of deputy commissioner by Commission—credibility of witness**

The Industrial Commission did not err by reversing a deputy commissioner's decision in a Tort Claims action arising from the shooting of a motorist by a Highway Patrol Trooper where a deputy commissioner had found that the Trooper's testimony was not credible and that his use of deadly force was negligent, and the Commission found that the Trooper's testimony was credible, that the Trooper had believed that he was in danger of being shot, and that his use of deadly force was deliberate and not negligent. The Commission is the ultimate fact-finder on appeal and is authorized to make findings and conclusions contrary to those made by the deputy commissioner. Language in *Brewington v. N.C. Dept. of Correction*, 111 N.C. App. 833, that the responsibil-

ity for weighing credibility lies solely with the hearing commissioner is distinguished as dicta.

## 2. Tort Claims Act— shooting by Highway Patrol Trooper— intentional rather than negligent

The Industrial Commission did not err in a Tort Claims action by reversing a deputy commissioner's finding of negligence arising from a shooting by a Highway Patrol Trooper where competent evidence supports the Commission's findings that the Trooper believed that he was in danger of being shot and that he intended deadly force. The Tort Claims Act does not permit recovery for intentional injuries.

Judge HUDSON concurring in the result.

Appeal by plaintiffs from a decision and order entered 3 March 2000 by the North Carolina Industrial Commission. Heard in the Court of Appeals 7 June 2001.

*McSurely & Osment, by Alan McSurely, for plantiff-appellants.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General William H. Borden, for defendant-appellee.*

HUNTER, Judge.

Norwood and Annie Fennell (collectively, "plaintiffs") appeal from a decision and order of the North Carolina Industrial Commission ("Commission"). In its decision, the Commission reversed the decision and order of the deputy commissioner and dismissed plaintiffs' Tort Claims Act, N.C. Gen. Stat. § 143-291 *et. seq.* (1999), claim against the State Highway Patrol ("Highway Patrol"). On appeal, plaintiffs assign error to the Commission's reversal of the deputy commissioner's decision. After a careful review of the record and briefs, the decision and order of the Commission is affirmed.

The record discloses evidence which tended to show on 30 August 1993, Trooper Richard L. Stephenson ("Trooper Stephenson"), of the Highway Patrol, was on duty in his patrol car conducting radar surveillance of the speed of traffic on Interstate 85 in Randolph County, North Carolina. At approximately 7:00 p.m., Trooper Stephenson clocked a northbound blue Pontiac Grand Am automobile traveling at a speed of seventy miles an hour in a zone with a posted speed limit of sixty-five. Trooper Stephenson pursued the

[145 N.C. App. 584 (2001)]

vehicle, activated his blue lights, and pulled the vehicle over to the shoulder.

The driver of the vehicle was Kenneth Fennell ("Fennell"), plaintiffs' son. Before Trooper Stephenson had the opportunity to fully position his patrol car, Fennell exited his vehicle and began walking towards Trooper Stephenson's. Immediately, Trooper Stephenson exited his patrol car and met Fennell between the two cars. Fennell inquired as to why he had been stopped, and Trooper Stephenson indicated that he had been stopped for speeding. Trooper Stephenson then asked Fennell to sit in the right front passenger seat of his patrol car, and Fennell complied.

Next, Trooper Stephenson asked Fennell for his operator's license, and Fennell produced a student ID. When Trooper Stephenson again asked for an operator's license, Fennell produced a New York license. Thereafter, Trooper Stephenson contacted dispatch to determine if Fennell had a valid North Carolina or New York license. Dispatch advised Trooper Stephenson that Fennell did not have a valid North Carolina license, and the information was inconclusive as to Fennell's New York license. After obtaining this information, Trooper Stephenson issued Fennell a citation for not having a valid North Carolina operator's license.

After determining that Fennell's car was a rental and sensing Fennell's nervousness, Trooper Stephenson asked Fennell whether he had any illegal drugs, contraband, or weapons in his vehicle, to which Fennell responded that he did not. Trooper Stephenson then asked Fennell if he could search the vehicle, and Fennell verbally consented. Notably, Trooper Stephenson had written consent forms in his patrol car that he normally asked motorists to sign, but he failed to secure a written consent on this occasion. Trooper Stephenson began by searching the passenger side of the vehicle. Upon placing his left hand under the front passenger seat, Trooper Stephenson discovered a black bag, removed it, and unzipped it.

When he had the bag approximately half open, Trooper Stephenson recognized the barrel of a gun. Trooper Stephenson asked Fennell about the gun, and Fennell immediately struck Trooper Stephenson with his fists twice between the eyes. Upon being hit, Trooper Stephenson dropped the black bag, and the two men began to struggle. During the struggle, Trooper Stephenson attempted to

use his night stick and mace, but both were either dropped or knocked out of his hand. Trooper Stephenson then threw Fennell to the ground and attempted to gain control of him. At this point during the struggle, Fennell attempted to grab Trooper Stephenson's service revolver. When Trooper Stephenson realized he was not going to be able to subdue Fennell, he released him and stood upright.

After the two separated, Fennell grabbed the black bag and unzipped it. At this juncture, Trooper Stephenson removed his service revolver and warned Fennell that if he continued to reach for the gun, he would shoot. Despite the warning, Fennell continued to reach in the bag and began to remove the gun. When Trooper Stephenson saw the butt of the gun, he fired his first shot. Nevertheless, Fennell continued to remove the gun from the bag, thus Trooper Stephenson fired a second shot. Still, Fennell continued to clear the gun from the bag, and Trooper Stephenson then fired a third and fourth shot in rapid succession. These shots caused Fennell to spin to his right, where he fell with his face to the ground. As Fennell fell to the ground, his gun flew out of his hand and landed approximately twelve feet from his body. Fennell died at the scene.

Upon taking an inventory of the area, police officers, who had arrived at the scene, found a black bag, a night stick, nail clippers, an AA battery, pepper mace, a set of scales, a plastic bag with crack cocaine, two prophylactics, a nylon bag with a mirror and a calculator inside, a plastic bag containing $1,200.00 in cash, shell casings, a set of keys, assorted coins, and a gun. Subsequent testing of the scales and gun established no usable finger prints.

On 26 May 1995, plaintiffs, on behalf of their son, filed this Tort Claims Act, N.C. Gen. Stat. § 143-291 *et. seq.*, claim with the Commission alleging negligence on the part of the Highway Patrol, *inter alia*, for the actions of Trooper Stephenson. Initially, plaintiffs' case was heard by Deputy Commissioner George T. Glenn II. During the proceedings before the deputy commissioner, certain inconsistencies developed as to Trooper Stephenson's account of the events—for instance, during a video deposition, Trooper Stephenson testified that he was twenty to twenty-five feet away from Fennell when he fired his first shot, however, during the hearing before the deputy commissioner, Trooper Stephenson testified that he was five to six feet away when he fired his first shot. Due to inconsistencies in Trooper Stephenson's testimony and the physical evidence, Deputy Commissioner Glenn questioned Trooper Stephenson's credibility. At

the conclusion of plaintiffs' evidence, Deputy Commissioner Glenn dismissed plaintiffs' claims against all defendants, except the Highway Patrol.

Then, on 30 June 1998, Deputy Commissioner Glenn filed his decision and order in this matter. In his decision, Deputy Commissioner Glenn found that Fennell did not have a gun and did not attempt to enter a gun into the situation; Trooper Stephenson's testimony was not credible; Trooper Stephenson did not intend to use the amount of force he did in fact use; Trooper Stephenson's use of deadly force was unjustified, excessive, and negligent; and the gun found at the scene was placed there by someone other than Fennell. Based on these findings, the deputy commissioner concluded that Trooper Stephenson's use of deadly force was negligent, and his negligence was the proximate cause of Fennell's death. Therefore, Deputy Commissioner Glenn ordered the Highway Patrol to pay plaintiffs $100,000.00 for Trooper Stephenson's negligence.

The Highway Patrol appealed to the Full Commission. On 5 August 1998, the Highway Patrol filed a motion for dismissal, or in the alternative summary judgment, based on collateral estoppel. The Full Commission reviewed this matter and filed its decision and order, with detailed findings and conclusions, on 3 March 2000. In its decision and order, the Full Commission reversed the decision and order of Deputy Commissioner Glenn and denied the Highway Patrol's motion for dismissal, or summary judgment. Significantly, in its decision and order, the Full Commission found:

25. Although inconsistencies exist between Trooper Stephenson's testimony at the hearing before the Deputy Commissioner and the statements Trooper Stephenson gave following the incident, Trooper Stephenson's testimony regarding his actions as they relate to the shooting of [] Fennell is uncontradicted and is accepted as credible.

26. When Trooper Stephenson shot [] Fennell, he acted intentionally. Trooper Stephenson believed that [] Fennell had a gun and that he was in danger of being shot by [] Fennell. Trooper Stephenson not only intended to shoot, but intended to inflict deadly force, and did so in fact by causing the death of [] Fennell. Therefore, [] Fennell's death was the result of an intentional act and cannot be found to have been the result of negligent conduct.

FENNELL v. N.C. DEP'T OF CRIME CONTROL & PUB. SAFETY

[145 N.C. App. 584 (2001)]

Plaintiffs failed to meet their burden of proving Trooper Stephenson was negligent.

Therefore, the Full Commission concluded:

3. When Trooper Stephenson shot [] Fennell, he not only intended to shoot, but intended to inflict deadly force. . . .

4. . . . The death of [] Fennell was the result of Trooper Stephenson's intentional actions and cannot be found to be the result of negligent conduct. Therefore, plaintiffs' claim must be denied. . . .

5. The Industrial Commission does not have jurisdiction over claims arising from intentional acts. . . .

Based on its findings of fact and conclusions of law, the Full Commission reversed Deputy Commissioner Glenn's decision and order and denied plaintiffs' claim. Plaintiffs now appeal to this Court.

[1] Plaintiffs assign error to the Commission's reversal of the deputy commissioner's decision. Specifically, plaintiffs challenge the Commission's findings that: (1) Trooper Stephenson was credible, and (2) Trooper Stephenson acted intentionally, not negligently. After a careful review of the record, we find that competent evidence supports the Commission's findings, and the Commission's findings support its conclusions and decision. Therefore, we reject plaintiffs' assignment of error.

Under the Tort Claims Act, "when considering an appeal from the Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision." *Simmons v. N.C. Dept. of Transportation,* 128 N.C. App. 402, 405-06, 496 S.E.2d 790, 793 (1998). In a proceeding under the Tort Claims Act, "[f]indings of fact by the Commission, if supported by competent evidence, are conclusive on appeal even though there is evidence which would support a contrary finding." *McGee v. N.C. Dep't of Revenue,* 135 N.C. App. 319, 324, 520 S.E.2d 84, 87 (1999); *see also Bailey v. Dept. of Mental Health,* 272 N.C. 680, 683-84, 159 S.E.2d 28, 30-31 (1968). "On appeal, this Court 'does not have the right to weigh the evidence and decide the issue on the basis of its weight. The Court's duty goes no further than to determine whether the record contains any evidence tending to support

the finding.' " *McGee*, 135 N.C. App. at 324, 520 S.E.2d at 87 (quoting *Anderson v. Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)).

First, plaintiffs contend that the responsibility of weighing a witness' credibility lies solely with the deputy commissioner; hence, the Commission erred in reversing Deputy Commissioner Glenn's credibility determination regarding Trooper Stephenson, and making findings contrary to those made by the deputy commissioner. We are unpersuaded by plaintiffs' argument.

"[T]he Commission is the ultimate fact-finder on appeal and is authorized to make findings and conclusions contrary to those made by the deputy commissioner." *McGee*, 135 N.C. App. 319, 324, 520 S.E.2d 84, 87. In fact, under the Tort Claims Act, the Commission has statutory authority on appeal to "amend, set aside, or strike out the decision of the hearing commissioner and may issue its own findings of fact and conclusions of law." N.C. Gen. Stat. § 143-292 (1999). Furthermore:

> In reviewing the findings made by a deputy commissioner . . ., the Commission may modify, adopt, or reject the findings of fact found by the hearing commissioner. *Watkins v. City of Wilmington*, 290 N.C. 276, 280, 225 S.E.2d 577, 580 (1976). It is the Commission that ultimately determines credibility, whether from a cold record or from live testimony. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 413 (1998)[, *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999)]. This State's Supreme Court in *Adams*, overruling *Sanders v. Broyhill Furniture Industries*, 124 N.C. App. 637, 478 S.E.2d 223 (1996), *disc. review denied*, 346 N.C. 180, 486 S.E.2d 208 (1997), stated:
>
> "Consequently, in reversing the deputy commissioner's credibility findings, the full Commission is not required to demonstrate, as *Sanders* states, 'that sufficient consideration was paid to the fact that credibility may be best judged by a first-hand observer of the witness when that observation was the only one.' "
>
> *Adams*, 349 N.C. at 681, [509] S.E.2d at 413. Thus, the Commission is the ultimate fact-finder on appeal and is authorized to make findings and conclusions contrary to those made by the deputy commissioner.

*McGee*, 135 N.C. App. 319, 324, 520 S.E.2d 84, 87.

At bar, Trooper Stephenson was the only witness to the events from start to finish. Three drivers did witness the events to an extent as they transpired, but none of the witnesses saw the events in their entirety. Moreover, the drivers saw Fennell strike Trooper Stephenson and the resulting struggle; yet, none of the witnesses noticed a gun in Fennell's hands. However, a gun was found approximately twelve feet from Fennell's body, which supported Trooper Stephenson's account of the events. Additionally, the police officers' inventory of the scene after the shooting supported Trooper Stephenson's and the drivers' accounts of a struggle between the two men.

While there may be some contrary evidence to the Commission's finding, primarily in the form of inconsistencies in Trooper Stephenson's accounts of the events and the physical evidence, the Commission, in an acceptable exercise of its discretion, gave more weight and credibility to the testimony of Trooper Stephenson than did Deputy Commissioner Glenn. Furthermore, although contrary evidence exists, some competent evidence of record supports the Commission's finding as to Trooper Stephenson's credibility, and therefore, the finding is conclusive on appeal.

In furtherance of their contention, plaintiffs rely on this Court's opinion in *Brewington v. N.C. Dept. of Correction*, 111 N.C. App. 833, 433 S.E.2d 798 (1993), for the proposition that, "the responsibility of weighing the credibility of the witnesses lies solely with the hearing commissioner." *Id.* at 839, 433 S.E.2d at 801. However, plaintiffs' reliance is misguided, as the above quote is merely dicta in our previous opinion.

In *Brewington*, a Tort Claims Act action, this Court affirmed a decision of the Commission, which affirmed and adopted a decision and order of a deputy commissioner, without the Commission making its own findings of fact and conclusions of law. *Id.* In doing so, we held that the Commission, when hearing appeals of claims from a hearing commissioner under the Tort Claims Act, may make its own findings of fact and conclusions of law, but that it is not required to do so. *Id.* We based our determination in part on the express language of N.C. Gen. Stat. § 143-292, which states, in pertinent part, the Commission "may issue its own findings of fact and conclusions of law." Significantly, a credibility determination by a deputy commissioner was not at issue in *Brewington*.

In the case *sub judice*, a deputy commissioner's credibility determination is at issue. We reiterate that under the Tort Claims Act, the Commission has the authority on appeal to "amend, set aside, or strike out the decision of the hearing commissioner . . . ." N.C. Gen. Stat. § 143-292. Certainly, the language of § 143-292—"amend, set aside, or strike out"—includes the authority for the Commission to reverse a deputy commissioner's credibility determination. Therefore, *Brewington* is distinguished.

[2] Next, plaintiffs contend that the Commission erred in reversing Deputy Commissioner Glenn's finding of negligence, and making findings contrary to those made by the deputy commissioner—particularly, the Commission's finding that Trooper Stephenson acted intentionally. Again, plaintiffs' argument lacks merit.

As stated in *McGee*, the Commission is the ultimate fact-finder on appeal in a Tort Claims Act action. *See McGee*, 135 N.C. App. at 324, 520 S.E.2d at 87. Based on our review of the record, competent evidence supports the Commission's findings that Trooper Stephenson acted intentionally when he shot Fennell; Trooper Stephenson believed Fennell had a gun and that he was in danger of being shot; and Trooper Stephenson intended to inflict deadly force. Consequently, the Commission's findings are conclusive on appeal.

It is well-settled that the Tort Claims Act does not permit recovery for intentional injuries. *See Jenkins v. Department of Motor Vehicles*, 244 N.C. 560, 94 S.E.2d 577 (1956); N.C. Gen. Stat. § 143-291 *et. seq.* Only claims for negligence are covered. *Id.* Therefore, the Commission does not have jurisdiction over claims arising from intentional acts, such as the ones at issue here. Accordingly, we hold that competent evidence supports the Commission's findings of facts, and thus, those findings are conclusive on appeal. Thus, we affirm the Commission's findings of fact, and decision and order.

Finally, in light of our affirming the Commission's decision and order, the Highway Patrol's cross-assignment of error as to collateral estoppel based on a federal court decision in this same case is deemed moot.

Thus, the Commission's decision and order is

Affirmed.

Judge MARTIN concurs.

FENNELL v. N.C. DEP'T OF CRIME CONTROL & PUB. SAFETY

[145 N.C. App. 584 (2001)]

Judge HUDSON concurs in the result in a separate opinion.

Judge HUDSON concurring in the result.

I agree that the decision of the Industrial Commission must be affirmed, but for different reasons than those above.

Unlike the majority, I believe this Court was correct when it stated in *Brewington v. N.C. Dept. of Correction,* 111 N.C. App. 833, 839, 433 S.E.2d 798, 801, *disc. review denied,* 335 N.C. 552, 438 S.E.2d 142 (1993), that, in cases under the Tort Claims Act, "the responsibility of weighing the credibility of the witnesses lies solely with the hearing commissioner." In cases under the Workers' Compensation Act, on the other hand, the Full Commission is required to make its own credibility determinations, and is not bound by the deputy commissioners who initially hear the cases. *See Adams v. AVX Corp.,* 349 N.C. 676, 681, 509 S.E.2d 411, 413 (1998). There are differences in the language of the Tort Claims Act and the Workers' Compensation Act that lead me to believe the legislature intended for the Full Commission to have an enhanced role on review in workers' compensation claims that it did not intend or provide in the Tort Claims Act.

Under the Tort Claims Act, the Industrial Commission is specifically "constituted a court for the purpose of hearing and passing upon tort claims against the State [departments and agencies]." N.C. Gen. Stat. § 143-291 (1999). Although the Commission may promulgate rules for the processing of these claims, the Rules of Civil Procedure and the Rules of Evidence specifically apply to tort claims. *See* N.C. Gen. Stat. § 143-300 (1999). The claims are initially heard by a deputy commissioner sitting as trial judge. The first appeal of a decision is to the Full Commission, and "shall be heard . . . on the basis of the record in the matter and upon oral argument of the parties." N.C. Gen. Stat. § 143-292 (1999). The Full Commission may not take new evidence in deciding the case. *See id.*

By contrast, under the Workers' Compensation Act, the Industrial Commission was created by the General Assembly as "a commission." *See* N.C. Gen. Stat. § 97-77(a) (1999). The Commission is "primarily an administrative agency of the State, charged with the duty of administering the provisions of the North Carolina Workers' Compensation Act." *Hanks v. Utilities Co.,* 210 N.C. 312, 319, 186 S.E. 252, 257 (1936) (*citing In re Hayes,* 200 N.C. 133, 139, 156 S.E. 791, 793 (1931)); *see also Letterlough v. Atkins,* 258 N.C. 166, 168, 128

S.E.2d 215, 217 (1962). The Commission is explicitly *not* a court of general jurisdiction, but is a quasi-judicial board with jurisdiction limited to that conferred upon it by the Legislature. *See Letterlough*, 258 N.C. at 168, 128 S.E.2d at 217; *Bryant v. Doughtery*, 267 N.C. 545, 548, 148 S.E.2d 548, 551 (1966). In workers' compensation cases, the Rules of Civil Procedure and the Rules of Evidence do not apply, and the Commission is empowered to make its own rules; in fact, the statute requires that "[p]rocesses, procedures and discovery under this Article shall be as summary and simple as reasonably may be." N.C. Gen. Stat. § 97-80(a) (1999). The Workers' Compensation Act provides for disputes to be heard by a deputy, and for review of the award of the deputy by the Full Commission. *See* N.C. Gen. Stat. §§ 97-84, 97-85 (1999).

In conducting such review, the Full Commission "shall review the award, and, if good ground be shown therefor, reconsider the evidence, receive further evidence, [and] rehear the parties or their representatives." N.C.G.S. § 97-85. In *Adams*, the Supreme Court explicitly relied on this section in holding that "the ultimate fact-finding function [lies] with the [Full] Commission—not the hearing officer. It is the Commission that ultimately determines credibility, whether from a cold record or from live testimony." *Adams*, 349 N.C. at 681, 509 S.E.2d at 413. In a tort claims case, the Full Commission may not hear additional evidence and need not make its own findings of fact and conclusions of law. However, in a workers' compensation case, the commission can and must make its own findings of fact and conclusions. *See Brewington*, 111 N.C. App. at 838-39, 433 S.E.2d at 801. The courts have made it very clear that the Full Commission in a workers' compensation case may not simply affirm and adopt the findings of a deputy commissioner, but is required to conduct its own review of the evidence, including credibility rulings. *See Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 552-53 (2000) *(citing Adams*, 349 N.C. at 680-81, 509 S.E.2d at 413-14); *Keel v. H & V Inc.*, 107 N.C. App. 536, 542, 421 S.E.2d 362, 367 (1992). I believe that the General Assembly has created a uniquely expansive role for the Full Commission in workers' compensation cases and has not done so in tort claims. While the statute and the courts have clearly described the nature of this role in workers' compensation cases, the Tort Claims Act does not have the same provisions and does not provide a basis for us to treat Full Commission review in tort claims any different from the way we typically treat credibility rulings by a judge, on appeal from a non-jury trial.

In a non-jury trial, the trial judge acts as both judge and jury, and resolves credibility issues as the trier of fact. *See In re Oghenekevebe,* 123 N.C. App. 434, 439, 473 S.E.2d 393, 397 (1996) *(citing Williams v. Pilot Life Ins. Co.,* 288 N.C. 338, 342, 218 S.E.2d 368, 371 (1975)). This court has summarized the usual standard of review of such findings as follows:

> The findings of fact by a trial court in a non-jury trial have the force and effect of a verdict by a jury and are conclusive on appeal if supported by competent evidence. . . . *Henderson County v. Osteen,* 38 N.C. App. 199, 247 S.E.2d 636 (1978), [*judgment affirmed,* 297 N.C. 113, 254 S.E.2d 160 (1979)]. [T]he trial court, having had the fullest opportunity to hear the testimony and observe the demeanor of the parties, to weigh any competent evidence either party cared to place before the court and arrive at appropriate conclusions [regarding the issues], . . . should be accorded deference unless his findings and conclusions are manifestly unsupported by the record.

*McAulliffe v. Wilson,* 41 N.C. App. 117, 120-21, 254 S.E.2d 547, 550 (1979). Given the different language in the Tort Claims Act and the Workers' Compensation Act regarding review by the Full Commission, I do not find a reason to conclude that the Legislature intended to empower the Full Commission to overrule credibility determinations of the hearing officers in tort claims, as it clearly intended in workers' compensation cases. I therefore conclude that review by the Full Commission of findings of the deputy commissioner in a tort claim is governed by this usual standard.

Here, the Full Commission completely disregarded the Deputy Commissioner's determination that Trooper Stephenson's testimony was not credible, which I do not believe it was empowered to do. Furthermore, in this determination it made a finding, challenged by plaintiff, that in my opinion is not supported by competent evidence in the record. In this finding (number 25), the Commission wrote that "Trooper Stephenson's testimony regarding his actions as they relate to the shooting of Mr. Fennell is uncontradicted and is accepted as credible." To the contrary, Trooper Stephenson's testimony, particularly regarding the distance between himself and Fennell during the shooting, was plainly contradicted by his own prior statements and by the forensic evidence.

However, because plaintiffs did not assign error to several other significant findings of the Full Commission, I concur in

the result reached by the majority. Among these findings are the following:

15. After the two men separated, Mr. Fennell ran to and picked up the black bag and began to unzip it. Trooper Stephenson removed his service revolver when Mr. Fennell picked up the bag and told Mr. Fennell that if Mr. Fennell continued to attempt to get the gun, Trooper Stephenson would shoot him. Despite this warning, Mr. Fennell continued to attempt to remove the gun from the bag.

16. When Trooper Stephenson saw the butt of the gun coming out of the bag in Mr. Fennell's hand, he fired once at Mr. Fennell. Trooper Stephenson did not know at that time whether he had hit Fennell with his first shot. After the first shot, Trooper Stephenson waited to determine what Mr. Fennell was doing. When Trooper Stephenson discovered that Mr. Fennell was still attempting to gain control of the gun, he again told Mr. Fennell not to remove the gun. After determining that Mr. Fennell was continuing to remove the gun from the bag, Trooper Stephenson fired a second shot at Mr. Fennell. After the second shot, Mr. Fennell continued removing the gun with his right hand. When Mr. Fennell cleared the gun from the bag and positioned it in Trooper Stephenson's direction, Trooper Stephenson fired the third and fourth shots in rapid succession. These shots caused Mr. Fennell to spin to his right, where he fell with his face to the ground. Additionally, after these final two shots, Mr. Fennell's gun flew from his hand. A gun was found later approximately twelve feet from the location of Mr. Fennell's body.

As plaintiffs did not assign error to the above findings of fact, they are binding on appeal. *See Long v. Morganton Dyeing & Finishing Co.*, 321 N.C. 82, 84, 361 S.E.2d 575, 577 (1987); N.C.R. App. P. 10(a). These findings do support the Commission's conclusion that Trooper Stephenson believed he was in danger of being shot by Fennell and that he intended to inflict deadly force when he shot Fennell. Since the Tort Claims Act does not cover intentional acts which are reasonable, plaintiffs cannot recover. *See Frazier v. Murray*, 135 N.C. App. 43, 48, 519 S.E.2d 525, 528 (1999), *appeal dismissed*, 351 N.C. 354, 542 S.E.2d 209 (2000).