EVALYN GONZALES, PLAINTIFF v. NORTH CAROLINA STATE UNIVERSITY, DEFENDANT

No. COA07-87

(Filed 15 April 2008)

## 1. Employer and Employee— professor harassing student— ten-year history—no prior formal complaint—action against University

Defendant's failure to act on a prior claim of sexual harassment by a student against a professor was the proximate cause of plaintiff's injuries from similar behavior, even though the prior incident occurred ten years previously and did not result in a formal complaint. The Industrial Commission correctly decided for plaintiff in a Tort Claims action for negligent infliction of emotional distress and negligent retention and supervision of the professor.

## 2. Tort Claims— jurisdiction—ratification

Although the Industrial Commission lacked jurisdiction over a ratification claim in a Tort Claims action alleging sexual harassment, the error was of no consequence because the Commission correctly determined the issue of negligence.

## 3. Tort Claims— sexual harassment—damages—evidence

The Industrial Commission did not abuse its discretion in its award of damages of $150,000 in a sexual harassment claim where plaintiff presented expert testimony on the issue. The Commission was entitled to rely on the evidence presented and accord it the weight it deemed proper.

Appeal by defendant from decision and order entered 21 July 2006 by Commissioner Laura Kranfield Mavretic in the North Carolina Industrial Commission. Heard in the Court of Appeals 15 October 2007.

**GONZALES v. N.C. STATE UNIV.**

[189 N.C. App. 740 (2008)]

*Kennedy, Kennedy, Kennedy & Kennedy, by Harvey L. Kennedy
and Harold L. Kennedy, for plaintiff.*

*Attorney General Roy Cooper, by Tina Lloyd Hlabse, for
defendant.*

ELMORE, Judge.

Dr. Shuaib Ahmad, an employee of North Carolina State
University (defendant or NCSU), joined the faculty as an assistant
professor in 1980. In 1986, Ahmad was promoted to associate profes-
sor, and in 1991 he became a professor. Ahmad became the Director
of the Construction Facilities Laboratory on Centennial Campus in
the 1996-97 academic year.

During the 1987-88 school year, Ahmad sexually harassed Martha
Brinson, NCSU's Director of Communications in the College of Engi-
neering. On the day after the incident, Brinson reported the conduct
to her immediate supervisor, Jenna Rayfield. Rayfield referred
Brinson to Dr. Larry Monteith, who was, at that time, the Dean of the
College of Engineering. Brinson went to Monteith that day and reiter-
ated her complaint. Although Monteith suggested that Brinson file a
formal complaint with Billie Richardson, NCSU's sexual harassment
officer, she declined to do so. Her decision was based both on
Richardson's dismissive· attitude regarding her previous report of a
"peeping Tom," and on a desire to protect her privacy. In 1988 or 1989,
Dr. Downey Brill became Dean of the College of Civil Engineering,
and Brinson again reported Ahmad's conduct, calling Ahmad "a mon-
ster." Brill asked if Brinson had filed a report, and she told him that
although she had reported the incident before, she had not filed a for-
mal complaint because she wished the matter to remain confidential.

Kathy A. Wood (plaintiff Wood)[1] attended NCSU from 1993-98,
majoring in civil engineering and environmental engineering. In May
of 1996, Ahmad hired plaintiff Wood to serve as a research assistant.
Shortly thereafter, Ahmad began to sexually harass plaintiff Wood.
Despite Ahmad's request that she continue working with him, plain-
tiff Wood left her job in August of 1996 as a result of the harassment.
She refused to have anything to do with Ahmad, including taking his
class in structural engineering, which, because the class was
required, resulted in her inability to continue in her curriculum.
Plaintiff Wood also reported Ahmad's conduct to Leslie Dare, who

---

1. Wood is the plaintiff in a companion case, *Wood v. North Carolina State
University*, COA-07-88.

was NCSU's sexual harassment officer at that time. After reporting Ahmad's conduct, plaintiff Wood discovered that Ahmad had harassed other students and employees in the past.

Evalyn Gonzales (plaintiff Gonzales) attended NCSU beginning in 1993. She graduated with a degree in engineering, and, pursuant to her plan to attend graduate school, applied for a job as a research assistant. Ahmad contacted plaintiff Gonzales and offered her a job. Plaintiff Gonzales interviewed with Ahmad, who "told her that he liked her because her skin color was the same as his." At some later point, plaintiff Gonzales, who had also applied for other jobs, contacted Ahmad about the job again. He told her that he would discuss the position over coffee, and offered to pick plaintiff Gonzales up at her apartment. Plaintiff Gonzales instead offered to meet Ahmad on campus. Ahmad therefore met her on campus, where plaintiff Gonzales got into his car and he told her that they could talk over lunch.

Rather than discussing plaintiff Gonzales' job prospects, however, Ahmad instead pursued a range of personal topics including his troubled marriage, whether plaintiff Gonzales had a boyfriend, his knowledge of massage techniques, and the potential for the two to go to the movies. After lunch, rather than returning plaintiff Gonzales to campus, Ahmad brought her to Lake Johnson and told her to take a walk with him. During the walk, Ahmad began to touch plaintiff Gonzales inappropriately. She objected, yelling "this isn't okay!" Ahmad continued his advances, and plaintiff Gonzales continued to object.

Ahmad then abruptly changed the subject and took plaintiff Gonzales back to campus. They did not speak on the way back, but as plaintiff Gonzales exited the car, Ahmad told her that he would instruct his secretary to draft the paperwork needed to hire her as his research assistant.

Plaintiff Gonzales went immediately to her boyfriend's office and told him what had occurred. He told her to report the matter. Shortly thereafter, plaintiff Gonzales spoke with one of Ahmad's former employees, Tony Modesta. Modesta suggested that plaintiff Gonzales should speak to plaintiff Wood. When plaintiff Gonzales contacted plaintiff Wood, the two compared their experiences. Plaintiff Wood suggested that plaintiff Gonzales write down what had happened, and told plaintiff Gonzales of another woman that Ahmad had allegedly harassed.

Plaintiff Gonzales also contacted a former professor, who referred her to Dare. Dare told plaintiff Gonzales to file a formal complaint, and represented to plaintiff Gonzales "that she was the first person to make a sexual harassment complaint with the University regarding Dr. Ahmad." Dr. Tony Mitchell, who helped Dare in the investigation of both plaintiffs' complaints, spoke with Brill. Brill informed Mitchell of the incident ten years before involving Brinson. Mitchell contacted Brinson, informed her of the new complaints, and requested that she make a written record of her own experience. Brinson provided Dare a written complaint to assist in the investigation.

Through their investigative efforts, Dare and Mitchell discovered at least eight additional women who Ahmad had sexually harassed from 1986-97. As a result of the investigation, Provost and Vice Chancellor for Academic Affairs Phillip J. Stiles told Ahmad that he intended to fire Ahmad and that Ahmad had ten days in which "to make a written request for either a specification of reasons or a hearing."

Although Ahmad did not respond within the designated time period, NCSU did not fire him. Instead, the university allowed Ahmad to resign, agreed to pay him his salary for the balance of the school year, and agreed "to place a 'neutral' letter of reference in [his] personnel file." After informing both plaintiffs about the agreement, university officials refused to communicate further with plaintiffs.

On 28 May 1999, plaintiffs filed tort claims against NCSU, alleging negligent infliction of mental and emotional distress on Ahmad's part and negligent retention and supervision of Ahmad on NCSU's part. Deputy Commissioner George T. Glenn, II, filed a Decision and Order in plaintiffs' favor on 24 June 2005, and NCSU appealed to the Full Commission. On 21 July 2006, the Full Commission affirmed, with slight modifications, the Deputy Commissioner's Decision and Order. NCSU now appeals to this Court.

Preliminarily, we note the appropriate standard of review:

The standard of review for an appeal from the Full Commission's decision under the Tort Claims Act shall be for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them. As long as there is competent evidence in support of the

Commission's decision, it does not matter that there is evidence supporting a contrary finding. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding. Thus, when considering an appeal from the Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision.

*Simmons v. Columbus Cty. Bd. of Educ.*, 171 N.C. App. 725, 727-28, 615 S.E.2d 69, 72 (2005) (quotations and citations omitted).

[1] In its first argument on appeal, NCSU avers that the Full Commission erred because there was no competent evidence to support its finding of negligence. We disagree.

Specifically, NCSU claims that the Full Commission erred in finding "that NCSU breached its duty to plaintiffs and proximately caused plaintiffs' alleged damages." NCSU argues that although it might have breached a duty to Brinson, there was no evidence to show that that breach proximately caused injury to plaintiffs. Accordingly, NCSU submits that "[p]laintiffs have erroneously attempted to extrapolate and apply the duty owed to Brinson to their claims . . . [without producing] any competent evidence that NCSU breached any duty owed to them."

NCSU primarily argues that Ahmad's earlier harassment of Brinson was not the proximate cause of plaintiffs' injuries. This misses the point. It was not Ahmad's conduct towards Brinson that opens NCSU to liability. Rather, it was NCSU's failure to properly *respond* to the earlier harassment that was the proximate cause of plaintiffs' injuries.

This Court has defined proximate cause as:

a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

*Loftis v. Little League Baseball, Inc.*, 169 N.C. App. 219, 222, 609 S.E.2d 481, 484 (2005) (citation and emphasis omitted).

In this case, Brinson complained of Ahmad's actions ten years prior to his harassment of plaintiffs. Nevertheless, NCSU took no cor-

rective action. NCSU suggests that because Brinson refused to file a formal complaint, it could not move forward in an investigation. We find this suggestion implausible. With or without a formal complaint, numerous members of the university's administration were aware of the allegations. The Full Commission found as fact, supported by expert witness Debra Ragan Jessup's testimony, that NCSU failed to follow its own guidelines. NCSU claims that "[w]ithout substantiation of Brinson's allegations, NCSU could not take any negative employment action against Ahmad." Nevertheless, NCSU could and should have requested a written complaint, made written documentation of Brinson's oral complaint, and conducted a further investigation to determine the veracity of the claim. Any of these actions could have forestalled Ahmad's subsequent misconduct.

Moreover, NCSU's "pattern of ignoring complaints of sexual misconduct and threatening behavior," as the Full Commission noted in reference to the administration's dismissive attitude regarding the "peeping Tom" incident that Brinson reported and the fact that the "peeping Tom" in question was allowed to haunt the NCSU campus for sixteen years, "shows institutional indifference and a lack of concern" on NCSU's part. "[A] person of ordinary prudence could have reasonably foreseen" that such indifference could lead to unreported sexual misconduct and the eventual injuries suffered by plaintiffs. *Id.*

NCSU also claims that the ten year time period is simply too long to allow a causal connection. We agree that the time lapse is troubling. However, the Full Commission found that Ahmad continued to harass female students in the intervening time, listing seven women by name in addition to plaintiffs. NCSU cannot, by turning a blind eye to reported misdeeds, hope to escape liability based on subsequent victims' failures to report later bad behavior. NCSU is correct that Ahmad might have been exonerated had it conducted a proper investigation. However, having failed to take the proper steps to investigate, NCSU should have reasonably foreseen that "consequences of a generally injurious nature . . . [were] probable under all the facts as they existed." *Id.*

We note NCSU's claim that expert witness Jessup's testimony incorrectly relied on case law from this Court. However, we find NCSU's characterization of Jessup's testimony unpersuasive. Jessup testified as an expert in the field of human resources that NCSU failed to follow its own sexual harassment guidelines, that the guidelines themselves were defective in that they did not require the immediate initiation of an investigation and follow up, and that NCSU failed in

its duty to properly disseminate its sexual harassment policy. NCSU's suggestion that plaintiffs' claims "hinge upon their interpretation of *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 340 S.E.2d 116 (1986)," is simply incorrect. Although Jessup's testimony did deal, in part, with that case, it was only for the proposition that "the knowledge by an agent and/or manager was imputed to the employer."[2]

NCSU's arguments regarding negligent supervision and negligent infliction of emotional distress are essentially the same as its arguments above: that without a formal complaint on Brinson's part, no investigation could be pursued. We reject this contention as we did above; Brinson's failure to submit a formal complaint did not absolve NCSU of responsibility.

[2] NCSU next attacks the Industrial Commission's assertion of jurisdiction over plaintiffs' claims of ratification. We agree that the Industrial Commission overstepped its bounds by addressing this theory of recovery; "the Tort Claims Act allows a suit against the State only for ordinary negligence in the forum of the Industrial Commission." *Collins v. N.C. Parole Comm'n*, 118 N.C. App. 544, 548, 456 S.E.2d 333, 336 (1995). However, having already held that the Full Commission was correct in its determination of negligence, it is unnecessary to address the issue of ratification. Accordingly, although the Industrial Commission lacked jurisdiction over the ratification claim, the error was of no consequence. We therefore modify the decision and order to remove that part which addresses plaintiffs' theory of ratification, while leaving intact the remainder of the decision and order.

[3] Finally, NCSU claims that the Full Commission abused its discretion in its award of $150,000.00 to each plaintiff because there was no competent evidence on damages. We disagree.

"The amount of damages awarded is a matter within the discretion of the Commission. The Commission's order may not be disturbed unless, in view of the Commission's findings as to the nature and extent of the injury, the award is so large as to shock the conscience." *Jackson v. N.C. Dep't of Crime Control & Pub. Safety*, 97 N.C. App. 425, 432, 388 S.E.2d 770, 774 (1990) (citation omitted). In this case, plaintiffs presented expert testimony on the issue of damages from both Rosemary Smith Nelson, Ph.D., and Dr. Gary Albrecht.

---

2. Because it does not appear that the Full Commission relied to any extent on Jessup's testimony regarding Title VII of the Civil Rights Act of 1964, we decline to address NCSU's arguments regarding that statute.

The Full Commission was entitled to rely on the evidence presented and accord it the weight that the Full Commission deemed proper. We will not substitute our judgment for the Full Commission's. *See Fennell v. N.C. Dep't of Crime Control & Pub. Safety,* 145 N.C. App. 584, 589-90, 551 S.E.2d 486, 490 (2001) ("On appeal, this Court does not have the right to weigh the evidence and decide the issue on the basis of its weight. The Court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.") (quotations and citations omitted). There was "evidence tending to support the finding" in this case. *Id.* The Full Commission therefore did not err in its award of damages.

We affirm the Full Commission's decision and order, modified to exclude the sections that address plaintiffs' claims of ratification, over which the Full Commission improperly exercised jurisdiction.

Affirmed as modified.

Chief Judge MARTIN and Judge JACKSON concur.