CURTIS KEITH McGEE, Plaintiff v. NORTH CAROLINA DEPARTMENT OF REVENUE, Defendant

No. COA98-1246

(Filed 19 October 1999)

**1. Tort Claims Act— negligence—Commission is ultimate fact-finder**

In a negligence case filed under the Tort Claims Act based on damages to plaintiff's truck engine for failure to put anti-freeze in it while it was seized by defendant pursuant to a judgment and execution on the previous owner of the truck, the Full Commission did not err in reversing the deputy commissioner's decision to deny the claim because: (1) the Full Commission is the ultimate fact-finder on appeal and is authorized to make findings and conclusions contrary to those made by the deputy commissioner, and (2) there is ample evidence to support the Full Commission's findings that defendant's negligence proximately caused plaintiff's damages and defendant was not contributorily negligent.

**2. Tort Claims Act— negligence—pre-judgment and post-judgment interest**

In a negligence case filed under the Tort Claims Act based on damages to plaintiff's truck engine for failure to put anti-freeze in it while it was seized by defendant pursuant to a judgment and execution on the previous owner of the truck, the Full Commission did not err by failing to award pre-judgment and post-judgment interest in favor of plaintiff because N.C.G.S. § 24-5 does not authorize interest for an award of damages under the Tort Claims Act.

Appeal by defendant from judgment entered 24 June 1998 by the North Carolina Industrial Commission and cross-appeal by plaintiff. Heard in the Court of Appeals 16 August 1999.

*Larry L. Eubanks and Jerry D. Jordan for plaintiff-appellee.*

*Attorney General Michael F. Easley, by Associate Attorney General Felicia Gore Hoover, for the State.*

WALKER, Judge.

Plaintiff brought a claim for damages to his truck under the Tort Claims Act, N.C. Gen. Stat. § 143-291 *et. seq.* The deputy commissioner denied plaintiff's claim. The Full Commission (Commission) reversed the deputy commissioner's decision and ordered defendant to pay plaintiff $15,290.54 in damages and court costs.

The Commission's findings include the following:

1. During the early morning hours of May 15, 1992, Betty McGee, the estranged wife of plaintiff, Curtis Keith McGee, and plaintiff's mother were awakened by a team of officers from the Forsyth County Sheriff's Department wearing plain clothes and carrying guns. Although the testimony is not clear on the reason for the officers' presence, it appeared to be a "drug raid."

. . .

3. Based upon the arrest and seizure report for Betty McGee, 578 units of an unnamed controlled substance was found during the search. These controlled substances were apparently Valium pills, based upon other evidence presented.

4. Betty McGee subsequently pled guilty to simple possession of a schedule IV controlled substance, a misdemeanor.

5. The plaintiff was never charged with a criminal offense in connection with the drugs found in the home occupied by his mother and estranged wife.

6. The plaintiff did not live with his mother at 5008 Days Brook Road, Winston-Salem, N.C. Betty McGee was residing temporarily with her mother-in-law while trying to locate a place to live. The house she previously rented had been sold and she was forced to move.

7. On May 15, 1992, the plaintiff, who was a truck driver, was in Georgia.

. . .

9. The evidence is conflicting on the question of why Richard A. Hughes, a controlled substance enforcement officer for the North Carolina Department of Revenue was present at plaintiff's mother's house during the early morning hours of May 15, 1992.

He was not at the time working in his position of part-time auxiliary deputy sheriff for Forsyth County.

10. Richard A. Hughes testified that he was called by Sergeant Crater, a deputy sheriff, and requested to come to the home of plaintiff's mother. Based upon the greater weight of the evidence, Mr. Hughes was called because the officers had found a 1979 Kenworth tractor truck parked in plaintiff's mother's yard. The truck was registered at the Department of Motor Vehicles in the name of Clinton Ray Price. Mr. Hughes had previously initiated an Execution from the N.C. Department of Revenue against Clinton Ray Price. The Execution directed the sheriff of Forsyth County to satisfy the judgment from personal or real property of Clinton Ray Price.

11. Prior to levying on the 1979 Kenworth tractor truck on May 15, 1992, Mr. Hughes was advised by Betty McGee that the truck in question did not belong to Clinton Ray Price. Mr. Hughes was also shown a notarized Bill of Sale and title dated February 18, 1992, indicating that Clinton Ray Price sold the truck to Curtis Keith McGee. The certificate of title was endorsed to Betty McGee. The truck was sold to plaintiff prior to the March 4, 1992 entry of judgment against Clinton Ray Price.

12. Plaintiff failed to register the title to the truck at the Department of Motor Vehicles after the purchase. However, the truck was inoperable on May 15, 1992.

13. After having notice that Clinton Ray Price no longer owned the truck in question, Mr. Hughes levied upon the truck based upon the prior Judgment and Execution. The Notice of Levy was signed on May 15, 1992 by Richard A. Hughes.

14. Defendant contends that the Notice of Levy was signed in Mr. Hughes' capacity as auxiliary deputy sheriff because only a sheriff or deputy sheriff can levy on an execution. Although this is a correct statement of the law, Mr. Hughes testified that he was acting for the N.C. Department of Revenue on May 15, 1992 when he was called to plaintiff's mother's home. Mr. Hughes' total involvement in this case was intended to be in his capacity as a revenue officer for the state. Based upon the Notice of Levy, R.A. Hughes took the truck into his possession and appointed Ingram's Garage as his agent by leaving the truck with Ingram's Garage subject to the orders of R.A. Hughes only.

. . .

17. At some subsequent time, more than two years after the seizure of plaintiff's truck, his truck was returned after plaintiff agreed to pay approximately $1,000.00 in storage costs. . . .

18. At some point while plaintiff's property was under the direct control of R.A. Hughes and his agent, Ingram's Garage, the engine block cracked due to lack of anti-freeze.

19. After the seizure of the truck and prior to the time the weather turned cold, plaintiff made repeated efforts to have anti-freeze installed in his truck. He called Mr. Hughes numerous times and his attorney called Mr. Hughes asking for permission to put anti-freeze in the truck. Plaintiff also called the sheriff's department in reference to getting anti-freeze in the truck, but was advised that the truck was under the control of Mr. Hughes.

20. Mr. Hughes told plaintiff and his attorney to have plaintiff purchase the anti-freeze, take it over to Ingram's Garage and that he would take care of getting the anti-freeze placed into the truck.

21. Plaintiff took the anti-freeze to Ingram's Garage as instructed, but was not allowed to put the anti-freeze in the truck himself. The anti-freeze was left at Ingram's Garage, but was never put into the truck. When the truck was returned to plaintiff, the engine block had cracked. Shortly before the seizure, plaintiff had placed a new engine in the truck, flushed the radiator, had the truck repainted and was completing repairs to have the truck leased out for hauling.

22. The seizure of the truck was pursuant to a Judgment and Execution on Curtis Ray Price. There was never a judgment from which to issue an Execution and Levy against plaintiff or Betty McGee. There is no evidence of why the truck was being held after it became clear that Clinton Ray Price did not own it.

23. Mr. Hughes was called in to become involved in the seizure of the truck as a North Carolina Revenue Officer. All of his actions in reference to the seizure of the truck were in his capacity as a state revenue officer. There is no evidence that he was "on duty" as an auxiliary deputy sheriff when he was called to come to the house of plaintiff's mother. He intended to act in his capacity as a state revenue officer when he took possession of the truck and placed it under the control of Ingram's Garage as his agent. The

[135 N.C. App. 319 (1999)]

Sheriff's Department of Forsyth County understood that R.A. Hughes was exercising his authority as a North Carolina revenue enforcement officer in seizing the truck. There were numerous deputy sheriffs who could have signed off on the Notice of Levy at the time Mr. Hughes signed it, including Sergeant Crater. The effect of having the signature of R.A. Hughes on the Notice of Levy is that the North Carolina Department of Revenue issued an Execution and levied upon its own execution and further took exclusive possession of the property. The truck was held subject to the order of R.A. Hughes only.

24. Plaintiff's tractor truck was damaged while in the possession of R.A. Hughes and his appointed agent, Ingram's Garage. At the time plaintiff's truck was damaged, Richard A. Hughes was exercising control over the seized truck in the course and scope of his employment as an enforcement officer for the N.C. Department of Revenue.

25. Mr. Hughes had a duty to take reasonable measures to protect plaintiff's property from damage while in his possession. Mr. Hughes promised plaintiff that he would install anti-freeze in the truck if plaintiff purchased the anti-freeze and took it to Ingram's Garage. Mr. Hughes breached his duty to plaintiff by failing to install anti-freeze in the truck as promised.

26. Mr. Hughes' failure to install or have the anti-freeze installed in plaintiff's tractor truck was the proximate cause of the damage to plaintiff's truck from the freezing and cracking of the engine and, therefore, constituted actionable negligence. As a proximate result of the negligence of Mr. R.A. Hughes while acting in the course and scope of his employment, plaintiff sustained damages in the amount of $10,290.54 to his truck and $5,000.00 in the loss of net income while his truck was being repaired. The North Carolina Department of Revenue is liable to plaintiff for these damages.

27. Plaintiff did all he could do to try to keep his property from being damaged. Plaintiff was not contributorily negligent. Plaintiff's failure to register his truck with the Division of Motor Vehicles did not constitute contributory negligence.

The Commission concluded that defendant's negligence was the proximate cause of plaintiff's damages and that plaintiff was not contributorily negligent.

**[1]** The defendant argues that the Commission erred in reversing the deputy commissioner's decision and making findings and conclusions contrary to those made by the deputy commissioner. Defendant contends that the responsibility of weighing a witness' credibility lies solely with the hearing commissioner, which was Deputy Commissioner Jones in this case.

In reviewing the findings made by a deputy commissioner . . ., the Commission may modify, adopt, or reject the findings of fact found by the hearing commissioner. *Watkins v. City of Wilmington*, 290 N.C. 276, 280, 225 S.E.2d 577, 580 (1976). It is the Commission that ultimately determines credibility, whether from a cold record or from live testimony. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 413 (1998). This State's Supreme Court in *Adams*, overruling *Sanders v. Broyhill Furniture Industr*ies, 124 N.C. App. 637, 478 S.E.2d 223 (1996), *disc. review denied*, 346 N.C. 180, 486 S.E.2d 208 (1997), stated:

> Consequently, in reversing the deputy commissioner's credibility findings, the full Commission is not required to demonstrate, as *Sanders* states, 'that sufficient consideration was paid to the fact that credibility may be best judged by a first-hand observer of the witness when that observation was the only one.'

*Adams*, 349 N.C. at 681, 411 S.E.2d at 413. Thus, the Commission is the ultimate fact-finder on appeal and is authorized to make findings and conclusions contrary to those made by the deputy commissioner.

Furthermore, when considering an appeal from the Commission, this Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings, and (2) whether the Commission's findings justify its conclusions and decision. *Simmons v. N.C. Dept. of Transportation*, 128 N.C. App. 402, 496 S.E.2d 790 (1998). Findings of fact by the Commission, if supported by competent evidence, are conclusive on appeal even though there is evidence which would support a contrary finding. *Bullman v. Highway Comm.*, 18 N.C. App. 94, 195 S.E.2d 803 (1973). On appeal, this Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The Court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Anderson v. Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965).

McGEE v. N.C. DEP'T OF REVENUE

[135 N.C. App. 319 (1999)]

Based on our review of the record, there is ample competent evidence to support the Commission's findings that defendant's negligence proximately caused plaintiff's damages and that plaintiff was not contributorily negligent.

[2] Plaintiff cross assigns as error the Commission's failure to award pre-judgment and post-judgment interest. Post-judgment interest is not collectible against the State without authorization by the legislature or unless the State has agreed to do so. *Myers v. Dept. of Crime Control*, 67 N.C. App. 553, 555, 313 S.E.2d 276, 277 (1984). In *Myers*, this Court held that statutory authority was necessary before any interest could accrue on a tort claims award, since the Tort Claims Act is in derogation of sovereign immunity and must be strictly construed. *Id.* Plaintiff, however, contends that he is entitled to interest under N.C. Gen. Stat. § 24-5 because the legislature amended the statute in 1985, after the *Myers* decision, to allow interest from the date the action is instituted.

However, in amending N.C. Gen. Stat. § 24-5, there is no indication that the legislature intended to authorize pre-judgment or post-judgment interest on an award of damages under the Tort Claims Act.

In addition, this Court held in the recent case of *Faulkenbury v. Teachers' and State Employees' Ret. Sys.*, 132 N.C. App. 137, 510 S.E.2d 675 (1999), that N.C. Gen. Stat. § 24-1 *et. seq.* does not allow interest to be awarded against the State. Therefore, plaintiff is not entitled to pre-judgment or post-judgment interest under N.C. Gen. Stat. § 24-5 for his claim against the State under the Tort Claims Act, and plaintiff's cross assignment of error is overruled.

Affirmed.

Chief Judge EAGLES and Judge McGEE concur.