JOSEPH HUMMEL, PLAINTIFF v. THE UNIVERSITY OF NORTH CAROLINA AND THE UNIVERSITY OF NORTH CAROLINA D/B/A THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, DEFENDANTS

No. COA02-398

(Filed 18 February 2003)

**1. Tort Claims Act— findings by Commission—deputy commissioner's findings—disregarded**

In a Tort Claims case, the Industrial Commission may disregard the findings of the deputy commissioner and substitute its own findings on appeal. Here, the Commission did not err by reducing a Tort Claims award of $500,000 for future loss of earning capacity for a doctor who had been injured as a college wrestler where the Commission found that the testimony did not support the award.

**2. Constitutional Law— North Carolina—law of the land clause—plaintiff not surprised**

The Industrial Commission did not violate the law of the land clause of the North Carolina Constitution in reducing a Tort Claims award for a doctor who had been injured as a college wrestler where it could not be said that new or surprising evidence was sprung upon plaintiff.

**3. Tort Claims Act— discretion of Commission—findings—stipulation**

It was within the Industrial Commission's discretion in a Tort Claims case to find that a doctor injured as a college wrestler had failed to prove loss of future income despite a stipulation that the accident had proximately caused plaintiff severe and permanent injuries. The Commission specifically found unconvincing plaintiff's evidence of reduced future earning capacity.

**4. Tort Claims Act— award reduced by full Commission—credibility of evidence**

The Industrial Commission in a Tort Claims case may choose to find facts in contradiction to the evidence presented by plaintiff even when the opposing party offers no contradictory evidence. Here, the Commission did not err by reducing a deputy commissioner's award of $500,000 for a doctor injured as a college wrestler to $50,000 where the Commission specifically found that plaintiff's evidence of future lost earnings was not

HUMMEL v. UNIVERSITY OF N.C.

[156 N.C. App. 108 (2003)]

credible but that his testimony about his physical impairment was credible.

## 5. Tort Claims Act— pain and suffering award—evidence credible

The Industrial Commission did not err in a Tort Claims case by awarding plaintiff $50,000 in damages where the evidence supporting the award for pain and suffering, mental anguish, and physical impairment is credible and supports the finding.

Judge HUDSON concurring.

Appeal by plaintiff from opinion and award entered 14 January 2002 by the North Carolina Industrial Commission. Cross-appeal by defendants from opinion and award. Heard in the Court of Appeals 13 November 2002.

*Martin A. Rosenberg for plaintiff-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorneys General Thomas Ziko and Robert T. Hargett, for the State.*

EAGLES, Chief Judge.

Joseph J. Hummel ("plaintiff") appeals from an opinion and award by the North Carolina Industrial Commission ordering the University of North Carolina at Chapel Hill ("defendant") to pay plaintiff $50,000. Defendant cross-appeals from this opinion and award. After careful review of the record and briefs, we affirm the Industrial Commission's opinion and award and deny defendant's cross-appeal.

Plaintiff was a wrestler on defendant's collegiate wrestling team. He joined the wrestling team as a "walk-on" participant during his freshman year in college in 1994. Plaintiff had been ranked as the first or second place wrestler in his weight class in the state of New Jersey throughout his senior year in high school. Plaintiff wrestled on the university intercollegiate team during his freshman and sophomore years in college.

On 6 July 1996, plaintiff was lifting weights at the Student Recreation Center on the campus of UNC-Chapel Hill. Plaintiff was severely injured when a cable came loose on a "lat-pull" machine plaintiff was using. Because of the loose cable, a weight bar hit plaintiff's head forcefully at a great speed. The weight bar itself was not heavy, but was linked to weights of between 285 and 300 pounds. The

HUMMEL v. UNIVERSITY OF N.C.

[156 N.C. App. 108 (2003)]

weight machine plaintiff was using had been maintained negligently. Plaintiff described the accident as follows:

> And when I pulled down, the cable pulled out, and I hit myself on the head. I was knocked unconscious, had a little bit of bleeding at my head. My roommate, workout partner, drove me home, and I slept for about twenty-three or twenty-four hours straight. They kind of left and went and did their thing and came back, and I was still sleeping. And at that time they woke me up and decided it was time that I go to the doctor.

On 10 July 1996, plaintiff reported his accident to a physical therapist at UNC-Chapel Hill's Wrestling Camp. Plaintiff's regular physician, Dr. Greg Tuttle, was out of town at the Olympics in Atlanta when plaintiff was injured. Dr. Tuttle suggested that plaintiff see a physician at the Student Health Center, which plaintiff did on 23 July 1996. Plaintiff complained of headache, dizziness, nausea, and tinnitus. The Student Health physician diagnosed plaintiff with post-concussive syndrome. Upon his return, Dr. Tuttle examined plaintiff and concurred in that diagnosis. Dr. Tuttle described post-concussive syndrome as a "loss of normal brain function or regulation of the brain following some type of trauma where there may be increased pressure within the brain or auto-regulation of the brain."

Plaintiff's injury and subsequent headaches caused him to sit out the 1996-1997 wrestling season with a medical "redshirt." Dr. Alan Finkel of the UNC-CH Headache Clinic began seeing plaintiff as a result of his headache symptoms in November 1996. Dr. Finkel found some improvement in plaintiff's headache symptoms, but found that plaintiff suffered from headaches when he attempted to run or when he lifted weights. Dr. Finkel was unsure how long plaintiff would be required to forgo participation in the University's wrestling program or plaintiff's normal exercise routine.

Plaintiff returned to his home for Christmas break in 1996. While at home in New Jersey, plaintiff's old wrestling coach visited him. On one occasion, the coach grabbed plaintiff in a playful manner on the back of plaintiff's neck. As a result of this light contact, plaintiff states that he "[got] woozy or dizzy or swimmy-headed and [had] a headache for probably a week or two after that [incident] continuously."

Upon his return to North Carolina in January 1997, plaintiff underwent an MRI. This test showed that plaintiff was suffering from

multiple mild degenerative changes and disk bulges in his cervical spine. Plaintiff's symptoms improved over the next few months, and he was cleared to wrestle in the 1997-1998 season. Plaintiff wrestled in twenty matches during that season and was knocked unconscious in six of those matches. Plaintiff was hit in the back of his head during a 20 February 1998 match at North Carolina State University. As a result of the hit, plaintiff suffered a concussion. Plaintiff also decided, based upon his doctors' advice, to end his wrestling career. At the time plaintiff decided to stop wrestling, he was ranked twelfth nationally and ranked first in the Atlantic Coast Conference ("ACC"). Plaintiff missed the ACC and National Collegiate Athletic Association ("NCAA") Tournaments because of his injuries. Beginning in March 1998, plaintiff complained of having "racing thoughts" and irritability, which Dr. Finkel diagnosed as hypomania.

Plaintiff began medical school at UNC-Chapel Hill in the fall of 1998. In November 1998, plaintiff experienced incontinence several times while lifting weights. Plaintiff testified that he has lost control of his bladder and urinated on himself in public several times, as well as suffering from "impact-induced seizures." Dr. Tuttle testified that plaintiff's symptoms were related to his post-concussive brain injury.

An MRI in December 1998 showed additional degeneration of plaintiff's cervical spine. Plaintiff continued to have headaches after vigorous exercise or activity. A spinal tap procedure in February 1999 revealed that plaintiff's cerebral spinal fluid pressure was elevated. After a second spinal tap procedure confirmed that plaintiff's pressure was elevated, he began to take medication for that condition.

When plaintiff graduated from high school and throughout college, he intended to become a surgeon. Plaintiff began his surgical rotations during his third year of medical school. Plaintiff received honors in all three of his surgical rotations (orthopedics, pediatric surgery and plastic surgery) and was encouraged by his professors to become a surgeon. However, plaintiff did not pursue a specialization in surgery:

> During the surgery—some of [them are] particularly long. I was on one surgery that was about twelve hours. I'm—I have a difficult time with pain in my neck, standing kind of in the position that you do surgery in. For some of the shorter surgeries . . . I tolerated those all right. But for the majority of surgeries, which

range . . . from two to about six hours . . . my neck gets this kind of dull pain, and it heads down in kind of both of my shoulders and makes my hands and fingers tingle a little bit. I often get headaches . . . during those times as well. So those things kind of discouraged me from pursuing surgery.

Because of the discomfort plaintiff experienced during surgical procedures, plaintiff felt that surgery was no longer an option for him as a career. Plaintiff decided to specialize in family medicine rather than surgery.

Plaintiff initiated a lawsuit against defendant pursuant to the North Carolina Tort Claims Act. Plaintiff served the first set of interrogatories on defendant on 5 August 1999. Defendant failed to answer these interrogatories despite an order from the deputy commissioner to do so. Plaintiff moved for sanctions as a result of defendant's failure to answer interrogatories four times. As a sanction, defendant's responsive pleading was stricken, and defendant was ordered to pay $600 in plaintiff's attorney fees. On 5 March 2000, a deputy commissioner issued an order awarding plaintiff $500,000. Defendant appealed to the full Industrial Commission, which reduced plaintiff's award to $50,000. From this opinion and award, both parties appeal.

I.

[1] Plaintiff argues that the full Industrial Commission committed reversible error in reducing plaintiff's award from $500,000 to $50,000 because it disregarded expert testimony on plaintiff's behalf. We disagree.

Plaintiff's first argument concerns the standard of review applicable to a deputy commissioner's opinion in a Tort Claims Act hearing. Plaintiff questions the full Industrial Commission's ability to disregard the findings of fact included in the deputy commissioner's opinion. Specifically, plaintiff claims that the Industrial Commission disregarded the expert opinions offered by plaintiff's witnesses and formed its own expert opinions. This Court can review the decision of the full Industrial Commission "for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them." G.S. § 143-293 (2001). If the full Commission applied an incorrect standard of review to the deputy commissioner's findings, this Court

could reject the full Commission's findings and conclusions as errors of law.

This Court has compared the powers available to the full Industrial Commission on an appeal under the Tort Claims Act as opposed to an appeal under the Workers' Compensation Act. The full Commission's review of a Tort Claims case is not as highly structured as the review of a Workers' Compensation case. *See Brewington v. N.C. Dept. of Correction*, 111 N.C. App. 833, 433 S.E.2d 798, *disc. review denied*, 335 N.C. 552, 439 S.E.2d 142 (1993). When hearing an appeal in a Workers' Compensation case, the full Commission "shall review the award, and, if good ground be shown therefor, reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award." G.S. § 97-85 (2001) (emphasis added). This statute has been interpreted to mean that the deputy commissioner's findings of fact are not binding nor conclusive on appeal in Workers' Compensation cases. *See Adams v. AVX Corp.*, 349 N.C. 676, 509 S.E.2d 411 (1998), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999); *Keel v. H & V, Inc.*, 107 N.C. App. 536, 421 S.E.2d 362 (1992). In a Workers' Compensation case, the full Commission can review determinations of the deputy commissioner on weight of evidence and credibility of witnesses. *See Pollard v. Krispy Waffle*, 63 N.C. App. 354, 304 S.E.2d 762 (1983). In Workers' Compensation cases, "[i]t is the duty and responsibility of the full Commission to make detailed findings of fact and conclusions of law with respect to every aspect of the case before it." *Joyner v. Rocky Mount Mills*, 92 N.C. App. 478, 482, 374 S.E.2d 610, 613 (1988).

Alternatively, the language of G.S. § 143-292 does not require the Industrial Commission to issue its own findings of fact or conclusions of law when reviewing Tort Claims cases:

Such appeal, when so taken, shall be heard by the Industrial Commission, sitting as a full Commission, on the basis of the record in the matter and upon oral argument of the parties, and said full Commission may amend, set aside, or strike out the decision of the hearing commissioner and may issue its own findings of fact and conclusions of law.

G.S. § 143-292 (2001). G.S. § 143-292 allows but does not require the full Commission to make its own factual determinations and weigh the evidence. Therefore, the Tort Claims Act appears to give the Commission as much freedom as the Workers' Compensation Act.

The full Commission may disregard the findings of the deputy commissioner and substitute its own factual findings on appeal.

One case, in contravention of the Tort Claims Act, contained language that stated: "[T]he responsibility of weighing the credibility of the witnesses lies solely with the hearing commissioner." *Brewington v. N.C. Dept. of Correction*, 111 N.C. App. 833, 839, 433 S.E.2d 798, 801 (1993). However, *Brewington* is easily distinguished from the present case. In *Brewington*, the full Industrial Commission adopted the decision and order of the deputy commissioner as its own opinion. *Brewington*, 111 N.C. App. at 837, 433 S.E.2d at 800. Therefore, in *Brewington*, the weighing of the evidence was delegated to the deputy commissioner because the full Commission chose not to exercise its ability to amend, set aside, or strike out the decision of the hearing commissioner and issue its own findings of fact. *See id.*, G.S. § 143-292.

Additionally, the statement from *Brewington* has been found to be dicta that is not binding precedent. *See Fennell v. N.C. Dep't of Crime Control & Pub. Safety*, 145 N.C. App. 584, 591, 551 S.E.2d 486, 491 (2001), *cert. denied*, 355 N.C. 285, 560 S.E.2d 800 (2002). The express language of G.S. § 143-292 allows the full Commission to make its own findings of fact. *See Fennell*, 145 N.C. App. at 591, 551 S.E.2d at 491. "[T]he Commission is the ultimate fact-finder on appeal and is authorized to make findings and conclusions contrary to those made by the deputy commissioner." *Fennell*, 145 N.C. App. at 590, 551 S.E.2d at 491 (quoting *McGee v. N.C. Dep't of Revenue*, 135 N.C. App. 319, 324, 520 S.E.2d 84, 87 (1999)).

Here, the full Commission decided not to allow plaintiff to collect the amount of $500,000 awarded by the deputy commissioner. Instead, the Commission reduced the amount of plaintiff's award to $50,000. The Commission was not bound to accept the expert testimony offered by plaintiff on the valuation of plaintiff's future income merely because it formed part of the deputy commissioner's opinion and award. We hold that the full Commission appropriately reviewed the deputy commissioner's findings of fact and chose to issue its own findings of fact in compliance with G.S. § 143-292. In addition, the Commission's conclusions of law were supported by its findings of fact. The full Commission found that the economic evidence from Dr. Albrecht regarding plaintiff's diminished future earning capacity was not based upon credible assumptions about plaintiff's future earnings or disability. However, the Commission did find that plaintiff had

presented evidence of pain and suffering and mental anguish stemming from the accident in July 1996. There was no evidence about past or future medical expenses. Plaintiff also "establish[ed] a period of temporary impairment for the period from July 1996 to January 1997 which resulted from the July 1996 injury." This finding supports the Commission's award of $50,000 for plaintiff's "physical pain, mental anguish, impairment, and other damage." Contrary to plaintiff's argument, the Industrial Commission has not proffered its own medical opinion as to the causation of plaintiff's injury. Instead the Commission found that "[t]here is no credible evidence that plaintiff's cumulative condition, let alone that directly associated with his July 1996 injury, would prevent plaintiff from pursuing a career in surgery." To support this finding of fact, the Commission cited evidence presented regarding plaintiff's excellent scores in his surgical rotations, the encouragement he received from his professors to pursue surgery as a career, and his continued high academic performance in medical school. The Industrial Commission has judged the credibility of the expert medical and economic witnesses in combination with the remaining evidence and found that the testimony presented does not support an award of $500,000 for future loss of earning capacity. Plaintiff's first assignment of error is overruled.

## II.

[2] Plaintiff next assigns error to the full Commission's opinion based upon the "law of the land" clause in the North Carolina Constitution. Plaintiff argues that the Commission raised facts and issues which were not raised by defendant and deprived plaintiff the right to be heard upon those issues. We disagree.

The North Carolina Constitution provides:

No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land.

N.C. Con. Art. I, § 19. Plaintiff states that he was deprived of his rights contrary to the law of the land because the full Commission formed its own medical opinions contrary to the only medical expert testimony offered and did not give plaintiff an opportunity to present evidence contrary to the Commission's opinion. This assignment of error has no merit.

Plaintiff correctly asserted that "where the claim or defense turns upon a factual adjudication, the constitutional right of the litigant to an adequate and fair hearing requires that he be apprised of all the evidence received by the court and given an opportunity to test, explain or rebut it." *Shepherd v. Shepherd*, 273 N.C. 71, 76, 159 S.E.2d 357, 361 (1968) (quoting *In re Custody of Gupton*, 238 N.C. 303, 77 S.E.2d 716 (1953)). Here, plaintiff had an adequate and fair hearing on all the evidence presented in this case. Plaintiff's assignment of error does not point out with particularity what he characterizes as inappropriate evidence relied on by the full Commission to form its conclusions of law. Instead, plaintiff takes issue with the Commission's conclusions that were based on evidence the plaintiff introduced. Defendant did not present any evidence at the hearing and defendant's responsive pleading had been stricken as a sanction. Here, it cannot be said that new or surprising evidence was sprung upon plaintiff in violation of the law of the land. Instead, plaintiff had access to all of the evidence presented on his behalf. For this reason, the full Commission's opinion did not violate the North Carolina Constitution. This assignment of error is overruled.

### III.

**[3]** Plaintiff further argues that the Industrial Commission committed reversible error by failing to find that plaintiff was permanently injured when defendant stipulated to that fact before the hearing by the deputy commissioner. We disagree.

Plaintiff correctly states that both parties stipulated that the 7 July 1996 accident "proximately caused the plaintiff to suffer severe and permanent injuries." However, the Commission also stated that it did not find "that plaintiff has any permanent diagnosis for these conditions that was significantly caused by the July 1996 injury, that plaintiff would not have sustained these same conditions absent the injury of July 1996, or that these conditions were permanently disabling." The full Commission's finding that plaintiff had no disability means that he had not proven a loss of wage earning capacity. It was within the full Commission's discretion to find that plaintiff failed to prove loss of future income despite his permanent injury. Although a stipulation had been entered, plaintiff still bore the burden of proving his damages:

No judgment by default shall be entered against the State of North Carolina or an officer in his official capacity or agency

thereof unless the claimant establishes his claim or right to relief by evidence.

G.S. § 1A-1, Rule 55(f) (2001). The full Commission specifically found unconvincing plaintiff's evidence on reduced future earning capacity. The full Commission's findings of fact support its conclusions of law. Therefore, the full Commission did not err by failing to rule that plaintiff deserved compensation for reduced future earning capacity. This assignment of error is overruled.

### IV.

[4] Plaintiff argues that the Industrial Commission committed reversible error by reducing plaintiff's award based upon future earning capacity. Plaintiff contends that defendant did not offer any evidence to contradict plaintiff's evidence and that the award of $500,000 by the deputy commissioner should stand. We disagree.

Even when the opposing party offers no evidence to contradict that evidence offered by plaintiff, the Industrial Commission may choose to find facts in contradiction to the evidence presented by plaintiff. The Industrial Commission has the responsibility to weigh the evidence presented and determine the credibility of witness testimony. Here, defendant's responsive pleading was stricken as a sanction. Therefore the only evidence of damages was the plaintiff's request for the full amount available to him as a result of defendant's negligence under the Tort Claims Act, which was $500,000. Plaintiff also presented evidence regarding his pain and suffering as a result of the accident, in addition to expert testimony on plaintiff's loss of future earning capacity. While the Commission found plaintiff's testimony about his physical impairment from July 1996 to January 1997 to be credible, it specifically did not find the evidence regarding his future lost earnings to be credible. Since the determination of evidence credibility is within the power of the Industrial Commission according to the Tort Claims Act, the Commission did not err in its decision not to award plaintiff damages for future loss of earnings. This assignment of error is overruled.

### V.

[5] Defendant cross-appeals the opinion and award of the full Commission. Defendant contends that the Commission erred in awarding plaintiff $50,000 in damages because there was no competent evidence to support that finding. We disagree.

HUMMEL v. UNIVERSITY OF N.C.

[156 N.C. App. 108 (2003)]

A finding of fact by the full Commission is not reversible on appeal unless there is no competent evidence to support that finding. *See* G.S. § 143-293(2001); *Bailey v. Dept. of Mental Health,* 272 N.C. 680, 159 S.E.2d 28 (1968). Here, the Industrial Commission found that plaintiff's injury on 6 July 1996 was a "significant causative factor" for plaintiff missing a season of wrestling, suffering headaches, and limitation of his normal physical routine for at least six months. This finding of fact was supported by plaintiff's own testimony, as well as the testimony of his physician. The evidence regarding defendant's award for pain and suffering, mental anguish, and physical impairment is credible and supports the Commission's finding. Therefore, this assignment of error is overruled.

For the reasons stated, we affirm the opinion and award issued by the full Commission awarding defendant $50,000. In addition, we deny defendant's cross-appeal.

Affirmed.

Judge McGEE concurs.

Judge HUDSON concurs in the result in a separate opinion.

HUDSON, Judge, concurring in result.

While I agree with the result reached by the majority, I do not agree with the analysis of the difference between the role of the full commission in a case proceeding under the Tort Claims Act as compared to one under the Workers' Compensation Act. For the reasons discussed in my concurring opinion in *Fennell v. N.C. Dep't of Crime Control & Pub. Safety,* 145 N.C. App. 584, 593, 551 S.E.2d 486, 492 (2001), *cert. denied,* 355 N.C. 285, 560 S.E 2d 800 (2002), I believe that the General Assembly envisioned different roles for the full commission in the two types of claims, and that in a tort claim the full commission must defer to credibility determinations based on the hearing deputy's opportunity to observe the demeanor of witnesses. However, the full commission in this case acted appropriately when it made its own findings of fact and conclusions of law based on its review of the record before it, including the medical records and transcripts of the hearing and deposition testimony of Dr. Tuttle, who did not appear before the deputy commissioner. Thus, where the deputy commissioner did not actually view the demeanor of Dr. Tuttle or the other physicians whose records were in evidence, the full commission was

as well situated to assess this evidence as was the deputy commissioner. Thus, the findings of the full commission based on the medical evidence were within the scope of its role as defined by N. C. Gen. Stat. § 143-292 (2001).