KAREN COULTER, as Guardian for JOSHUA COULTER, DON and
KAREN COULTER, individually v. CATAWBA COUNTY BOARD OF EDUCATION

No. COA07-717

(Filed 4 March 2008)

**1. Tort Claims Act— school bus accident—insufficient evidence of negligence**

The Industrial Commission did not err by dismissing a tort claims action arising from a school bus accident where the evidence supported its findings, and the findings supported the conclusion that the bus driver was not negligent.

**2. Tort Claims Act— appellate review—only from decision of full Commission**

Questions of whether a deputy commissioner erred in an evidentiary ruling and wrongfully expressed an opinion were not re-

viewed on appeal where plaintiffs did not assign as error the Industrial Commission's failure to address these contentions. Appellate review is limited to the decision and order of the Industrial Commission.

Appeal by plaintiffs from an Opinion and Award entered 2 February 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 4 February 2008.

*Bryce O. Thomas, Jr., for plaintiff-appellants.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Tina Lloyd Hlabse, for defendant-appellee.*

STEELMAN, Judge.

The Industrial Commission's findings of fact are supported by competent evidence, and the Industrial Commission did not err in concluding that plaintiffs failed to prove that defendant's employee was negligent and that the negligence of defendant's employee caused injury to the minor plaintiff.

## I. Factual and Procedural Background

On 17 August 2001, Joshua Coulter (plaintiff) was a student passenger on a school bus driven by Brenda Foster (Foster), an employee of the Catawba County Board of Education (defendant). At approximately 3:30 p.m., Foster was returning to Webb A. Murray Elementary School in Newton, N.C. Foster was traveling on Section House Road towards Garren Drive, the driveway leading into the school. As Foster was making the right turn onto Garren Drive, she saw a car coming towards her at a "fairly fast rate of speed." The front tire of the car was across the center line and in Foster's lane of travel. In order to avoid a collision, Foster turned the bus to the right, causing the rear tire to hit the curb. When the tire went over the curb, plaintiff was thrown against the side window of the bus, breaking the window. Plaintiff was taken to the hospital and treated for cuts to his left neck, chin, upper lip, and scalp.

On 12 August 2004, plaintiffs filed this action against defendant pursuant to Article 31 of Chapter 143 of the General Statutes (Tort Claims Act). This matter was docketed and heard by the North Carolina Industrial Commission. On 2 February 2007, the Industrial Commission filed its Opinion and Award, which held that "Plaintiff

COULTER v. CATAWBA CTY. BD. OF EDUC.

[189 N.C. App. 183 (2008)]

failed to prove that defendant was negligent and that negligence caused the damages of which plaintiff complains." Plaintiffs appeal.

## II. Commission's Dismissal of Plaintiff's Claim

[1] In their first argument, plaintiffs contend the Commission erred in dismissing their claim. We disagree.

The North Carolina Tort Claims Act provides for payment of damages for personal injuries sustained by any person

> as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, . . . under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

N.C. Gen. Stat. § 143-291 (2007). "To recover under the Tort Claims Act, plaintiff must show that the injuries sustained by his son were the proximate result of a negligent act of a state employee acting within the course and scope of his employment." *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988) (citations omitted). "Under the Act, negligence is determined by the same rules as those applicable to private parties." *Id.* (citation omitted). "Negligence is the failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them." *Dunning v. Warehouse Co.*, 272 N.C. 723, 725, 158 S.E.2d 893, 895 (1968) (citation omitted).

N.C. Gen. Stat. § 143-293 governs appeals from the Industrial Commission to this Court, and provides in pertinent part:

> . . . Such appeal shall be for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them. . . .

N.C. Gen. Stat. § 143-293 (2007).

> On appeal, this Court does not have the right to weigh the evidence and decide the issue on the basis of its weight. The Court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.

*McGee v. N.C. Dep't of Revenue*, 135 N.C. App. 319, 324, 520 S.E.2d 84, 87-88 (1999) (citations and quotations omitted).

Plaintiffs argue that Foster made inconsistent statements, and that these alleged inconsistent statements prove that she was negligent and that this negligence was the proximate cause of the minor plaintiff's injuries.

The Commission found that:

16. As a whole Ms. Foster's testimony is credible. Though there are slight differences in Ms. Foster's reported statements, they are not inconsistent to the point of making Ms. Foster's testimony not believable.

While Foster's testimony was not totally consistent, there is competent evidence in the record to support the Commission's findings of fact. *See Vaughn v. Insulating Servs.*, 165 N.C. App. 469, 472, 598 S.E.2d 629, 631 (2004) (citation omitted). "Moreover, the Commission is the sole judge of the credibility of witnesses and the weight to be given the evidence." *Id.* (citation omitted).

Plaintiffs point to an alleged statement by Foster to Ms. Coulter that she was going faster than she should have been. However, Foster did not recall making this statement. Foster also testified that she was going less than five miles per hour when she turned off of Section House Road. This testimony is supported by the report prepared by Clarence Teague, Director of Transportation for defendant.

Plaintiffs further contend that the Industrial Commission's findings of fact 7-11 were not supported by the evidence. These findings read as follows:

7. Thereafter, Ms. Foster's attention was focused on turning onto Garren Drive.

8. Ms. Foster slowed her bus, checked her reference points and mirrors and specifically recalled looking out her bus door and seeing the curb, as she was trained to do in order to miss hitting the curb.

9. As she was making the turn, Ms. Foster estimated her speed to be less than five miles per hour.

10. As Ms. Foster was turning onto Garren Drive, she saw a small, dark vehicle coming off of Garren Drive at a high rate of speed toward her school bus and dart across the centerline.

11. Ms. Foster reacted to the oncoming vehicle in her lane by turning the school bus sharply to the right causing the rear tire of the school bus to go up on the curb and off again.

COULTER v. CATAWBA CTY. BD. OF EDUC.

[189 N.C. App. 183 (2008)]

There is competent evidence in the record to support these findings. Foster testified as to facts supporting each of these findings, and the Commission found her testimony to be credible and determined the appropriate weight to give to it. *See Vaughn,* 165 N.C. App. at 472, 598 S.E.2d at 631.

Plaintiffs further contend that the Commission's findings of fact 22 and 29-32 were not supported by the evidence. These findings read as follows:

22. Dr. Munoz testified that the accident and severity of the scar had an impact on Joshua psychologically. However, there were no new diagnoses made for Joshua after this incident. There are no references made in Dr. Munoz's notes as to what affect, if any, this incident had on Joshua's self-esteem or self-image. . . .

29. Jewell Blount and Darlene Woodruff, both school bus drivers at Murray Elementary, testified that they have run up on the curb as they were turning onto Garren Drive from Section House Road.

30. There was no evidence presented by plaintiff as to what speed was too fast for that turn. The other bus drivers testified that they routinely and safely made the turn onto Garren Drive from Section House Road going ten to fifteen miles per hour.

31. The only testimony as to Ms. Foster's speed on August 17, 2001 was Ms. Foster's testimony that she was traveling less than five miles per hour.

32. There was insufficient evidence to support a finding that Ms. Foster was in violation of any law in her operation of the bus.

As to finding of fact 29, Jewell Blount, a school bus driver, testified "I've hit the curb several times." Darlene Woodruff, another school bus driver, testified that she has hit the curb when turning onto Garren Drive. This testimony constitutes competent evidence supporting this finding.

With respect to finding of fact 30, the record reveals that plaintiffs presented no evidence regarding what speed would have been too fast to make the right turn onto Garren Drive. Jewell Blount and Darlene Woodruff testified that they routinely made the turn safely while traveling at a speed of ten to fifteen miles per hour.

As to finding of fact 31, Foster testified that she was traveling at less than five miles per hour. As previously discussed, although Ms. Coulter testified that Foster made contradictory statements, the Commission found Foster's testimony to be credible.

Finding of fact 32 is supported by competent evidence in the record. Foster testified that she was going less than five miles per hour and that she checked her mirrors, oncoming traffic, and traffic behind her and to her right and left before making the turn. Before turning, Foster looked to see if there were any vehicles coming out of Garren Drive, and she did not see any. Foster also checked that the curb was visible through the glass door to ensure that she would clear it upon making the turn. The Commission's finding that there is insufficient evidence of a violation of any law is supported by the record.

Each of the above discussed challenged findings of fact is supported by the evidence. The Commission's conclusions of law that plaintiff failed to prove that defendant was negligent and failed to prove that defendant's negligence caused the damages of which plaintiff complains are supported by the findings. Because the Commission did not err in concluding that plaintiff failed to prove that defendant was negligent, we need not discuss finding of fact 22, which pertains only to damages.

We affirm the Commission's dismissal of plaintiffs' claim. This argument is without merit.

### III. Alleged Errors by Deputy Commissioner

[2] In their next argument, plaintiffs contend that the Deputy Commissioner erred in denying their request to use deposition testimony in lieu of live testimony. Plaintiffs further contend that the Deputy Commissioner wrongfully expressed an opinion during the 24 August 2005 hearing. We disagree.

Appellate review is limited to the decision and order of the Industrial Commission. *See* N.C. Gen. Stat. § 143-293 (2007). Although plaintiffs' assigned as error the Deputy Commissioner's alleged errors, they have not assigned as error the Industrial Commission's failure to address this alleged error. Thus, this issue has not been properly preserved for our review.

This argument is without merit.

**HILL v. WEST**

[189 N.C. App. 189 (2008)]

AFFIRMED.

Chief Judge MARTIN and Judge STEPHENS concur.