An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-481

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

TIFFANY WILLIAMS, Individually and
as Guardian *Ad Litem* for ONESTY
BENNETT, Minor, Plaintiff,

v.

WILSON COUNTY BOARD OF EDUCATION,
    Defendant.

North Carolina Industrial
Commission
I.C. No. TA-22046

Appeal by plaintiff from decision and order entered 11 March 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 26 September 2013.

> *Attorney General Roy Cooper, by Associate Attorney General Christopher R. McLennan, for Wilson County Board of Education.*
>
> *Tanner and Romary, P.A., by Jeremy Tanner, for plaintiff-appellant.*

BRYANT, Judge.

Where there is competent evidence on the record to support the Full Commission's findings of fact and those findings in turn support the Commission's conclusions of law, we affirm the Decision and Order of the Full Commission.

On 13 October 2010, Tiffany Williams, serving as *guardian ad litem* for her daughter, plaintiff Onesty Bennett, a minor, filed suit against the Wilson County Board of Education in the North Carolina Industrial Commission under our Tort Claims Act. Evidence presented before Deputy Commissioner J. Brad Donovan on 25 April 2012 tended to show that on 4 May 2010, then twelve-year-old plaintiff was a passenger in a Wilson County school bus when the bus turned a corner, ran off the road, and traveled through a ditch. Plaintiff was jostled, and her head struck the bus window. Plaintiff testified that by the time she got to school, her head hurt. She informed her teachers of her headache but did not see a school nurse. "I couldn't really keep my head up so I just laid down." Plaintiff testified that at home that evening, she went to sleep earlier than usual, and when she awoke, her head still hurt. Two to three days later, plaintiff told her mother that she was still having headaches. Williams, testified that she called plaintiff's pediatrician, Dr. Debra Tetreault, but the first available appointment was not until 20 May 2010 – sixteen days after the accident. Williams then took plaintiff to see Dr. Melissa Roccos at Elite Chiropractic.

Dr. Roccos testified before Deputy Commissioner Donovan as an expert in the field of chiropractic medicine. Dr. Roccos examined plaintiff on 14 May 2010. After an interview during which she took plaintiff's history, Dr. Roccos performed an examination and took x-rays of plaintiff's neck.

Dr. Rocco testified using notes from her examination of plaintiff and concluded that plaintiff was "neurologically sound" but gave "musculoskeletal signs and closed musculoskeletal injury."

> A. . . . When [plaintiff] came in to the office, she showed indications of muscular spasm in several areas. The muscle spasms that she had at the front of the neck, characteristically, because these muscles attach from the outside of the neck up to the front bones in the collar bone, as they spasm, they shorten. And as they shorten, they tend to increase the patient's forward head carriage. That forward head carriage will change or increase the curve of the spine. And that's what we - we noticed on her x-ray. The other thing that [plaintiff] had was spasm underneath the rim of the skull in these little muscles called suboccipitals. And when the muscles in the suboccipital area spasm, again, because of their attachment points from the skull to the spine, oftentimes they will cause the skull to drop, which is, again, something that we noticed on x-ray of [plaintiff]. She also had muscle spasms in through the upper muscle - we have big muscles in our back that attach all the way up into our skull, like the trapezius muscle or the Levator spaculae. And these are big muscles that go

from one area of the body to the other. So oftentimes when people hear the word back, they think back down here. But in truth, the back is all of the back body. And [plaintiff] had indications of muscular spasm in the muscles from the upper mid-back into the base of the neck.

Q. Would all those findings be consistent with someone who had a sudden jerk of their head or either hit their head on a window?

A. Yes.

. . .

Q. And do you remember what your final diagnosis was?

A. It was a strain--- Well, she had some indications of mild concussive symptoms with the fatigue, the lethargy, the focus difficulties, and the headaches. And it was a strain of her neck, a strain of her back and muscular spasm.

. . .

Q. All right, and based on your education, training, experience, and the history that [plaintiff] gave you, and the history that her mom gave you, do you have an opinion to a reasonable degree of chiropractic certainty as to whether it was more likely than not that the injuries you described were caused by the
bus - school bus accident on May 4th, 2010?

A. Yes.

Q. What is that opinion?

A. I believe it was the cause of [plaintiff's] injuries.

. . .

>Q. And based on your education, training and experience, do you have an opinion as to whether your treatment of [plaintiff's] injuries were reasonable and necessary?

>A. Yes, they were.

When asked why her notes reflect that plaintiff struck the right side of her face while plaintiff testified that she struck the left side of her face, Dr. Roccos stated that she could not attest to why there was a discrepancy but mentioned that "[p]atients have a lot of difficulty remembering things immediately."

Despite receiving chiropractic treatment from Dr. Roccos, Williams took plaintiff to her pediatrician, Dr. Tetreault, for an examination on 20 May 2010.

Dr. Tetreault was deposed on 1 March 2012, and the transcript from her deposition submitted as evidence during Deputy Commissioner Donovan's proceedings. Dr. Tetreault was proffered without objection to testify as an expert witness in pediatric medicine. Dr. Tetreault testified that she examined plaintiff on 20 May 2010. During the examination plaintiff related that she had hit her head when her school bus ran off the road and afterward she had headaches. Based on the

interview, Dr. Tetreault's impression was that plaintiff's headaches began "fairly soon or immediately" after the school bus accident. Plaintiff did not complain of other symptoms. Dr. Tetreault did not observe any objective signs of physical injury to plaintiff, such as bruising or lacerations. During the interview, Dr. Tetreault also noted plaintiff's statement that she had prescription lenses but did not wear them.

> Q. And what happens with a person requiring prescriptive corrective lenses does not regularly wear them?
>
> A. They get headaches.
>
> Q. And does the degree to which a person's vision is impaired impact the severity of these symptoms?
>
> A. Yes, it can.
>
> . . .
>
> Q. Okay. And how impaired is [plaintiff's] vision without her glasses?
>
> A. When we asked her to do a standard eye chart reading, she could not read any of the letters on the chart without her glasses.

During her deposition, Dr. Tetreault was presented with Dr. Rocco's observations of plaintiff recorded over the course of three visits that occurred prior to plaintiff's 20 May 2010 examination by Dr. Tetreault. When asked if she would agree

with the chiropractor's opinion that muscle spasms, trigger points, and other observations noted in the record resulted from the bus accident, Dr. Tetreault testified she could not speak to that since she did not see plaintiff right after her accident. "When I saw her, she did not have any of those tenderness or any problems."

In the deputy commissioner's Decision and Order entered 17 August 2012, the deputy commissioner concluded that the school bus driver's negligent operation of the school bus was the proximate cause of plaintiff's injuries and that the medical treatment plaintiff received as a result of those injuries was reasonable and necessary. The Wilson County School Board appealed to the Full Commission (the Commission).

On 11 March 2013, after review of the record of the proceedings before the deputy commissioner, the deputy commissioner's decision and order, as well as the briefs and arguments of the parties, the Commission filed its Decision and Order reversing that of the deputy commissioner. The Commission made the following finding of fact:

> 23. Based upon a preponderance of the evidence of record, the Full Commission affords greater weight to the opinions of Dr. Tetreault than to those of Dr. Roccos as Dr. Tetreault had been Minor Plaintiff Bennett's treating physician since 2007 and

> specifically treats children in her day to day practice of medicine as a pediatrician. Further, the Full Commission affords greater weight to the opinions of Dr. Tetreault due to the inconsistencies noted in the records of Dr. Roccos and the testimony of both Plaintiff Williams and Minor Plaintiff Bennett.

The Commission further found that plaintiff displayed no evidence of injury on 20 May 2010 and had full range of motion in her neck. The Commission found Dr. Roccos' treatment of plaintiff was neither reasonable nor necessary. Plaintiff's claim for damages was therefore denied. Plaintiff appeals.

_____

On appeal, plaintiff raises the following issues: whether the Commission erred (I) by determining that medical records from Elite Chiropractic were unreliable; (II) by giving greater weight to the testimony of Dr. Tetreault; (III) when determining that plaintiff failed to present sufficient evidence of injury causation; (IV) when determining that plaintiff was not entitled to recover damages; (V) when failing to affirm the award of attorney fees and costs to plaintiff's counsel; and (VI) when it failed to make findings for additional attorney fees.

*I, II,* & *III*

Plaintiff argues that the Commission erred in determining that the medical records from Elite Chiropractic were unreliable. Specifically, plaintiff asserts the following:

> [I]n order to give greater weight to the testimony of Dr. Tetreault, [the Commission] has to first lay the foundation that Dr. Roccos' opinions and records cannot be relied upon and must simply be ignored because it is clear from the evidence as outlined in Deputy Commissioner Donovan's opinion that Dr. Tetreault deferred to Dr. Roccos to give an opinion about causation and what needed to be done to treat Bennett for her injuries.

We disagree.

Pursuant to Article 31 of Chapter 143 of our General Statutes, "Tort Claims Against State Departments and Agencies," when an appeal is taken from the Deputy Commissioner,

> [s]uch appeal, when so taken, shall be heard by the Industrial Commission, sitting as a full Commission, on the basis of the record in the matter and upon oral argument of the parties, and said full Commission may amend, set aside, or strike out the decision of the hearing commissioner and may issue its own findings of fact and conclusions of law.

N.C. Gen. Stat. § 143-292 (2013). "[T]he Commission is the ultimate fact-finder on appeal and is authorized to make findings and conclusions contrary to those made by the deputy commissioner." *Hummel v. Univ. of N.C.*, 156 N.C. App. 108, 114, 576 S.E.2d 124, 128 (2003) (citation and quotations omitted).

"The Industrial Commission's findings of fact are binding on appeal if supported by competent evidence even though there is also evidence which would support a contrary finding." *Hoover v. Charlotte-Mecklenburg Bd. of Educ.*, 87 N.C. App. 417, 419, 361 S.E.2d 93, 94 (1987) (citation omitted).

> In reviewing a decision of the Industrial Commission in a case arising under the Tort Claims Act, we are limited to addressing (1) whether the Commission's findings of fact are supported by any competent evidence, and (2) whether the findings of fact support the Commission's conclusions of law and decision.

*Davidson v. Univ. of N.C. at Chapel Hill*, 142 N.C. App. 544, 552, 543 S.E.2d 920, 925 (2001) (citations omitted). "On appeal, this Court does not have the right to weigh the evidence and decide the issue on the basis of its weight. The Court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Coulter v. Catawba County Bd. of Educ.*, 189 N.C. App. 183, 185, 657 S.E.2d 428, 430 (2008) (citation omitted).

Plaintiff argues that the Commission improperly gave more weight to Dr. Tetreault's testimony due to a discrepancy between plaintiff's testimony and Dr. Roccos' records as to which side of plaintiff's head she hit on the school bus window. While the Commission does state that inconsistencies between the records

of Dr. Roccos and plaintiff's testimony was a ground for affording greater weight to the opinion of Dr. Tetreault, this was not the sole basis. In its finding of fact, the Commission set out that it afforded more weight to the opinion of Dr. Tetreault over that of Dr. Roccos because "Dr. Tetreault has been Minor Plaintiff Bennett's treating physician since 2007 and specifically treats children in her day to day practice of medicine as a pediatrician." Plaintiff argues that the Commission erred in "afford[ing] greater weight to the opinions of Dr. Tetreault"; however, the determination of weight or credibility of the evidence is squarely within the function of the Commission as fact-finder and beyond the scope of our review. *See Hummel*, 156 N.C. App. at 114, 576 S.E.2d at 128; *see also Coulter*, 189 N.C. App. at 185, 657 S.E.2d at 430.

Plaintiff does not contest any specific finding of fact and does not argue that the Commission's findings of fact are unsupported. Indeed, in plaintiff's brief to this Court, plaintiff acknowledges Dr. Tetreault's testimony in support of the Commission's finding and subsequent conclusion that the 4 May 2010 bus accident was not the cause of plaintiff's injuries. Plaintiff summarizes Dr. Tetreault's testimony as stating "no

injury [was] noted on [plaintiff] etc [sic] and her failure to wear her glasses being a cause of her headaches . . . ."

The evidence presented to the Commission provides support for the Commission's findings of fact that "as of the May 20, 2010 visit with Dr. Tetreault, Minor Plaintiff Bennett displayed no evidence of any injury, [and] had full range of motion in her neck" and that "Plaintiff failed to present sufficient evidence to find that Minor Plaintiff Bennett's injuries were as a result of the May 4, 2010 accident or that medical treatment . . . was causally related to this accident." Therefore, the Commission's findings of fact are binding on appeal. *See id.* Further, these findings of fact support the Commission's conclusion that "[p]laintiff has failed to prove that [the] negligent operation of the bus was the proximate cause of Minor Plaintiff Bennett's injuries." Accordingly, plaintiff's arguments, challenging the Commission's findings on the cause of plaintiff's injuries based on the weight given medical testimony presented, are overruled.

Based on this holding, we need not reach the remaining issues presented in plaintiff's brief for preservation purposes regarding plaintiff's claims, damages, and attorney fees.

Affirmed.

Judges HUNTER, Robert C., and STEELMAN concur.

Report per Rule 30(e).